10  249<br>e110 553

## P. H. GOODWYN v. J. PRITCHARD.

In the case of sale of articles of produce, &c., sold by weight, the sale is not perfect till the articles are weighed, and until such time they remain at the risk of the seller.  C. C. 2493.

Parties may by agreement, withdraw their contracts from the operation of this rule, but if the agreement rests on inference, the inference should be clear, cogent and convincing.

The waiver of the benefit of the law which puts the thing sold at the risk of the seller, until the weighing, &c., is the waiver of an important legal right, and to impair this right under the law, an express or implied agreement to waive it should be distinctly and convincingly proved.

APPEAL from the District Court of the parish of Iberville, *Robertson*, J. *Goold* and *Stansbury*, for plaintiff.   *R. A. Upton*, for defendant and appellant.

SLIDELL, C. J.  In November, 1852, the plaintiff, a New Orleans merchant, agreed with the defendant, a planter in Iberville, for the purchase of his crop

of molasses, then in process of manufacture, at the rate of twenty cents per gallon, the plaintiff to furnish barrels. The molasses was to be delivered in barrels at the plantation, and the gallon was to be determined by weight, at twelve pounds to the gallon. The agreement originally, was for delivery on or before 25th December, and for payment, from time to time as delivered. It was subsequently agreed to extend the time of delivery to a date left somewhat indefinite by the evidence, but it would seem as late as 15th January; and it was understood that *Pritchard* might draw on *Goodwyn* for $1600, on account of the price, payable on first (fourth) January. *Goodwyn* paid on 4th January a bill so drawn, under date of 28th December. On the 4th January the defendant's sugar house took fire, and the undelivered portion of the molasses was in part damaged, and in part destroyed. The question presented is, at whose risk was the molasses at the time of its loss. The question, who should bear the risk of the destruction or deprivation of the thing sold, in the interval between the agreement of sale and the delivery, is one, which, treated as a question of natural equity, presents serious difficulties, and has divided the opinions of learned minds. *Puffendorf* and others thought that the Roman juris-consults had wandered from the true principles of natural justice in the adoption, as the general rule of the doctrine, that as soon as the contract of sale is perfect, the thing sold is at the risk of the buyer. Our Code has by positive provisions set at rest discussion, both as to the general rule and its exceptions, and these we shall first consider and apply to the general features of this case, leaving for subsequent remark some peculiar circumstances on which the defendant relies, for the purpose of withdrawing this case from the operation of the ordinary rules.

Our Code has adopted the principle of the Roman law above noticed, by declaring in Article 2431 that the sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the object and the price thereof, although the object has not yet been delivered nor payment made. The operation of the rule is, however, restricted to the pure and simple sale of a determinate thing, *un corps certain*; for by Article 2433 it is said, when goods, produce, or other objects are not sold in a lump, but by weight, by tale or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller until they be weighed, counted or measured.

Now in the present case the molasses remained in the possession of the defendant, and had not been weighed at the time of the fire, and under the Article 2433, its damages and destruction was at the planter's risk, and the loss must be borne by him. The case was not withdrawn from the operation of that Article by the fact that *Goodwyn* had agreed to buy and *Pritchard* to sell the whole crop of molasses. Until the weighing, the price and quantity were undetermined, and the sale could not in legal contemplation be considered perfect. The point is distinctly discussed by Pothier, with his usual clearness:

Cette décision a lieu nonseulement lorsqu'on a vendu une certaine quantité de marchandises à prendre dans un magasin où il peut y en avoir davantage, parce qu'en ce cas, comme nous venons de le dire, jusqu'à ce que la mesure ou le poids en ait été fait, ce qui a été vendu ne consiste encore en aucun corps déterminé sur lequel le risque peut tomber; elle a lieu aussi dans le cas où l'on aurait vendu tout ce qu'il y a dans un magasin, dans un grenier, si la vente en a été faite à raison de tant par chaque millier, par chaque muid de blé, etc.

La vente, en ce cas, n'est point censée parfaite, et les marchandises vendues ne sont point aux risques de l'acheteur, jusqu'à ce qu'elles aient été mesurées ou pesées; car jusqu'à ce temps, *non apparet quantum venierit.* Le prix n'étant constitué que pour chaque millier qui sera pesé, chaque muid qui sera mesuré, il n'y a point encore le prix déterminé avant la mesure ou le poids; et par conséquent la vente avant ce tems n'est point assez parfaite pour que le risque des choses vendues puisse concerner l'acheteur; il n'en doit être chargé qu'après que les marchandises auront été pesées ou mesurées.    Pothier, Vente No. 308. See also, Troplong, Vente No. 90, who suggests an additional consideration, the uncertainty of quantity.    Sans doute, cette chose est précisée quant au lieu qui la contient; mais elle ne l'est pas en égard à la quantité, et c'est ici la quan· tité qui est la condition décisive.    En effet, quand j'achete à la mesure, au poids, au compte, j'annonce que je ne veux envisager la chose que comme quantité, et non comme corps certain.    La quantité peut diminuer par dessica- tion, absorption, coulage, corruption, etc.; car il s'agit de choses naturellement sujettes à dépérissement.

It remains only to consider the special circumstances upon which the defen- dant relies, as withdrawing the case from the operation of the ordinary rule, governing sales by weight.

And in the outset of this enquiry it must be borne in mind, that although parties may by agreement withdraw their contract from the operation of the rule of law we have just considered, yet such agreement should not be let in, unless where there is no doubt of its existence.    If the agreement rests on infer- ence, the inference should be clear, cogent and convincing.

It is not pretended that there was an express agreement upon the prolonga- tion of the time of delivery, that the molasses should without weighing re- main until delivery at the risk of the buyer; and we may also observe here that it does not satisfactorily appear, as asserted in argument, that the prolon- gation was made purely for the accommodation of the buyer.    It is by no means clear that *Pritchard* was ready to deliver on 25th December; and the arrange- ments for further time with an intermediate partial payment was probably the result of considerations of mutual convenience, and mutual inability to comply at the time originally designated.

Then, an agreement by *Goodwyn* to waive the benefit of the law which puts the thing sold at the risk of the seller until the weighing, a waiver certainly of an important right, rests solely upon such inference as may be drawn from the following facts.    On the 25th December a letter appears to have been written by *Goodwyn* to *Pritchard,* which is not in evidence, and the tenor of which is only deducible from *Pritchard's* reply, under date of 27th December, which is in evidence, and of which letter *Goodwyn* acknowledged receipt, under date of 5th January, 1853.    *Pritchard's* letter is in these words:

IBERVILLE, December 27th, 1852.

Dear Sir: Your favor of the 25th, by Mr. *McGavock,* has been received, and according to your request, I reply that I am willing to accept your proposition to pay on the 3d of January three-fourths or four-fifths of the probable amount of molasses remaining in the cistern, which is not less than 10,000 gallons, and I suppose it is nearer 12,000 gallons.    The cistern is nearly new, and I have not had it in use long enough to know its contents.    It is of an irregular oval form, and difficult to measure the contents.    I form my judgment from the quantity of sugar drained over it.    You say that you wish to have it insured.    You will

do as you think for your interest, but it appears to me that it will be safe until the 15th or 20th of January, for there will be upwards of two hundred hhds. of sugar remaining in the cistern until after that date, so that it will be for my interest to keep a careful watch as I have no insurance upon anything.

I will draw upon you for the $1600, payable on 4th January, in favor of Mr. *James Teller*, to whom I owe a large amount, to be paid 1st and 4th January.                                   Yours very truly,

                                                       J. PRITCHARD.

In a letter of 5th January, written before intelligence of the fire, *Goodwyn* acknowledges receipt of his letter, informs *Pritchard* that his draft has been paid, and instructs him to fill and forward 200 half barrels by the next Saturday's steamer. And by an affirmative answer to an interrogatory, *Goodwyn* states that on the 5th January he made application to an Insurance Company, for insurance upon 10,000 gallons of molasses then in the sugar house of defendant as his property and for himself, and his application was accepted. This insurance, it may be inferred, proved ineffectual, having been made after the fire.

Although we are not informed of the precise terms of *Goodwyn's* letter of the 25th, to which *Pritchard* made the reply above stated, it is not unreasonable to infer from the language of the reply, that *Goodwyn* had intimated an insurance at *Pritchard's* expense. For *Pritchard* tells *Goodwyn* he has no insurance on anything, and thinks the molasses will be safe, but leaves *Goodwyn* to act as he thinks best, for his, *Goodwyn's*, own interest. At all events the matter is susceptible of this construction, in the absence of explanation to the contrary, and if so, there is nothing in the suggestion of insurance, which involves the existence of an implied understanding that the molasses in the meanwhile should be at *Goodwyn's* risk. Nor must we necessarily imply the existence of such an understanding from the fact of *Goodwyn* subsequently insuring on his own account. His advances on the molasses gave him an insurable interest, and his taking the precaution, may be reconciled with the hypothesis that although he considered a loss before delivery, would be at *Pritchard's* risk, he choose to protect himself against his insolvency. Even if he did it from a doubt about his legal right as vendee, it would not affect his right. To impair his right under the law, an express or implied agreement to waive it should be distinctly and convincingly proved. It should not be left to uncertain and inconclusive inference. See *Bach* v. *Cohn*, 3 Ann. 103; Civil Code 2267.

Judgment affirmed with cost.