No. 1479.—MICHAEL DUNCAN *v.* GEORGE ARNOLD HOLT & Co.

Failure to except to the jurisdiction will not render valid a judgment by a court without jurisdiction *ratione materiæ.*

A party, in whose favor a judgment has been rendered by a court having no jurisdiction, need not be made a party to the appeal.

Where a lot of cotton is sold by weight, delivery does not take place until the cotton is weighed. The sale is incomplete until actual delivery has taken place. The fact that the vendor subsequently sold and delivered the cotton to another party is incompatible with delivery to the first vendee.

APPEAL from the Second District Court of New Orleans. *Thomas, J. Randolph, Singleton & Hardie,* for plaintiff and appellant. *Campbell, Spofford & Campbell,* for defendants and appellees.

WYLY, J. Plaintiff sued the succession of George Arnold Holt and T. J. O'Regan, the surviving partner of the commercial firm of George Arnold Holt & Co., *in solido,* for the amount claimed by him in the Second District Court of New Orleans.

Both defendants appeared and pleaded to the merits, and there was judgment in their favor.

Plaintiff appealed.

Appellees move to dismiss this appeal because T. J. O'Regan, one of the defendants, has not been cited nor in any manner made party to the appeal.

Appellant contends that it was unnecessary to make O'Regan a party to the appeal because the judgment against him is a mere nullity, the Second District Court of New Orleans not having any jurisdiction as to him.

It is well settled that all parties interested in maintaining the judgment must be made parties to the appeal or it will be dismissed. 12 R. 203; 11 A. 409; 12 A. 775.

Is T. J. O'Regan interested in maintaining the judgment of a court that had no jurisdiction of the case *ratione materiæ?*

We think not. His failure to except to the jurisdiction of the Probate Court did not render valid the judgment as to him, which that court had not jurisdiction to decree.

The judgment as to O'Regan was a mere nullity, the Second District Court of New Orleans having only probate jurisdiction.

The motion to dismiss is therefore overruled.

ON THE MERITS.

Plaintiff alleges that he sold to the defendants on third February, 1866, one hundred and forty-five bales of cotton weighing fifty-three thousand and twenty-two pounds, at forty-eight cents per pound, "that on the fifth February, 1866, the defendant's broker caused said cotton to be turned out, sampled, classed, marked and transferred upon the books of the cotton press into the name of said defendants; and the said cotton was about being weighed by the weigher acting for the plaintiff when the weigher acting for the defendants forbid the weighing of said cotton;" the next day the brokers of the defendants notified

the plaintiff that the purchasers refused to receive the cotton; some correspondence ensued between the vendor and vendees, and the latter refused to accept the delivery and pay for the cotton because, as they aver, it was found to be damaged and in unmerchantable order.

Plaintiff avers that he subsequently placed the cotton again upon the market and caused it to be sold as soon as it could be done without injury by a prudent and skillful broker, who obtained therefor forty-four cents per pound, the highest market price, cotton having declined several cents per pound in the meantime.

He now sues the defendants to recover the difference in price between the amount received by him for the cotton at the last sale and the amount agreed upon in the negotiation with defendants.

The defendants denied generally the allegations of plaintiff, and averred they were not liable for the difference in the price of the cotton as claimed; that they never received the delivery of the cotton they had negotiated to buy; that they had a good reason to refuse to accept the delivery of said cotton " on account of the wet, pulpy, and unmerchantable condition of the bales at the moment plaintiff sought to impose said cotton on them, which they then, for the first time, discovered."

There was judgment in favor of the defendants, and plaintiff has appealed.

The plaintiff in his brief insists that the " cotton was by the purchaser's classer classed, marked, received and transferred on the black book of the cotton press from the plaintiff to the purchasers; and that this constituted a sale." The evidence satisfies us that the sale to the defendants was never perfected by the weighing and delivery of the cotton. It would be strange for the cotton to be transferred and delivered to the defendants and yet plaintiff be able to retain possession of the cotton and sell it to other parties which he did in a few days after the alleged sale.

The letters of plaintiff and the defendants, their correspondence in reference to the sale, made part of plaintiff's petition, show that the sale had not been consummated by delivery of the cotton. In plaintiff's letter of sixth of February, 1866, he says to the defendants : " if you persist in your refusal already made to receive said cotton and pay for the same I shall sell the same for your account and shall hold you responsible for whatever damages I may sustain in consequence of said refusal."

Upon the samples, and without seeing it, the defendants negotiated to buy the cotton at forty-eight cents per pound. It was never weighed and legally delivered to them. Article 2433 of the Civil Code declares that : " When goods, produce or other objects, are not sold in lump, but by weight, by tale, or measure, the sale is not perfect, inasmuch as the the things sold are at the risk of the seller, until they be weighed, counted or measured; but the buyer may require either the delivery of them or damages, if any be for the same, in case of non-execution of the contract."

Having sold the cotton by samples to the defendants, it was the duty of the plaintiff to tender to them the delivery of the bales corresponding with the samples in quality, and in good merchantable condition. Without doing so he could not complain if the defendants refused to accept the delivery and to comply with the terms of the contract.

The evidence in the record is somewhat conflicting, but it fully establishes the fact that the bales were in bad order and in an unmerchantable condition. The witness Borrin, a licensed cotton weigher of the city of New Orleans for the last fourteen years, employed by the defendants to examine the cotton and see whether it was free from country damage, false packing and to attend to the weighing, declares that on a particular examination of the lot, say eighty or ninety bales, "I found a considerable number of damaged and unmerchantable bales. The nature of said damage being a layer or wrapper, enveloping nearly the whole bale, and under the bagging of dry rotten cotton, highly discolored from long previous exposure to wet, the same influence which had destroyed the staple. The bagging and rope on these bales were rotten so as to be easily sundered by the hand." The same witness again testifies, " I made two examinations; on the first I refused to take it and so reported. I then returned in company with Mr. Duncan, the vendor, and made a second and more particular examination. I was about three-quarters of an hour or an hour examining it on the first occasion. The second required much longer time. I also gave it a third examination in company with Mr. Henry Miller, an experienced cotton classer, and John H. Smith, also a classer and receiver of cotton."

The witness Smith says: " I was called as a third party, and I examined the cotton in question; thirty-six bales in the press room of Fassman's press found damaged and gone to pulp on the outside; nineteen bales on the opposite corner of the yard were damaged, but I would have taken them on a proper allowance. I then called on the yard clerk to show me the balance of the cotton. * * * He informed me it was no use; it was pretty much all the same. I reported accordingly to Mr. George Arnold Holt, and of course the cotton was rejected as unmerchantable. I have been an expert in cotton the last twenty years. Taking the lot as a lot it was not in a merchantable condition." The witness Campbell who received and weighed the cotton for O. B. Graham & Co., who afterwards purchased it, says: " I examined it thoroughly, looking at every bale and having my men to tear off the bagging. The condition was very bad. It was all in bad condition except a few bales."

From the evidence we conclude that the cotton was not throughout equal to the samples and in good merchantable bales. The tender of delivery of such bales, damaged and pulpy in the outer layer, and in bad order, was not such a tender as would subject the defendants to damages on failing to accept the delivery and to comply with the terms of the sale.

The plaintiff failed to put the cotton in good order, when objected to,

and to tender the same for delivery to the defendants as merchantable bales, in every respect corresponding with the samples.

This was a pre-requisite before the seller could demand of the buyers to receive it and pay the price, or in default thereof become liable to him for damages.

We concur in the opinion of the court below who heard the delivery of the evidence by the witnesses, that the plaintiff has failed to make out such a case as entitles him to a judgment.

It is therefore ordered that the judgment against the plaintiff and in favor of the defendant, the succession of George Arnold Holt, be affirmed with costs.

Rehearing refused.