The opinion of the court was delivered by
Nicholls, C. J.
We find in the record the following admission:
“ It is admitted, and in which admission all parties interested join, that the sheriff’s statement annexed to the rule herein, is correct as to his charges as to the sum total of sales, and as to the proceeds, as specified of the property pointed out by the various parties, as subject to their respective rights of sequestration under which they assert their privilege; the question of rank and privilege to be determined by the evidence now to be taken.”
The first proposition which we will notice is that last advanced in plaintiff’s brief: “that, in any and all events, they have a priority and preference of payment out of the proceeds of the property sold by the sheriff in this case, by reason of the privilege which they obtained under their attachment and their fi. fa.”
The parties whose claims to privileges superior to that of the plaintiffs, have been recognized, by the District Oourt, do not rest their right upon their, sequestrations, but upon the fact that they are unpaid vendors of the various lots of articles which have been sold, and upon the proceeds of which they claim a privilege. It has been repeatedly decided that the. privilege resulting from an attachment *1654 or seizure is subordinated to privileges legally existing upon the property seized at tbe time of the attachment or seizure.
The real contention of the appellant (one common to the case of all the appellees) is that the court erred in applying the rule of law announced in McLane vs. His Creditors, 47 An. 135, to the contracts which are involved in this litigation. They maintain that the facts bearing upon them bring them relatively to the existence of a privilege under the decision in Claflin vs. Mayer, 41 An. 1048, “ that the contracts were not Louisiana contracts, but were made, entered into and consummated in States where the common law prevails.”
The syllabus in the Claflin case reads as follows:
“Where an agent in New Orleans for non-resident dealers has authority only to exhibit samples and receive orders, which he communicates to his principal for acceptance or rejection; held, that an order so transmitted was similar in every respect to an order to purchase sent direct by the buyer to the seller, and when accepted and filled and the goods delivered to the carrier and insured by the buyer, that it was a contract where said order was accepted and filled and the goods delivered.”
In the body of the opinion the court, referring to the parties who represented the vendors in Louisiana, said: “The agent’s authority here was limited and restricted. He could not bind his principal, and his sole duty was to exhibit the samples, receive and forward orders for goods.”
We find in the cases at bar an entirely different state of facts. The authority of the parties who represented the vendors here was not limited and restricted to exhibiting samples and receiving and forwarding orders for goods for acceptance. On the contrary, when the interviews between Theo. Lehman and these various parties erminated, the situation was not that of parties waiting to see whether or not propositions for purchases, which were to be sent forward, would be accepted or not by principals residing in other States and depending upon the action of those persons in order to determine whether contracts would be made or not, but of parties who had then and there made completed contracts of sale, the one as a purchaser, the other claiming to be authorized by their principals to make presently concluded sales, and so making them.
There was no misunderstanding between the parties as to the attiude in which they respectively stood. Lehman did not deal with *1655 the representatives of the foreign houses as solicitors for those houses forwarding orders for acceptance or rejection, but as agents of those houses, making present sales for them and forwarding orders not for acceptance or rejection, but in execution of concluded sales. The orders sent forward were sent forward solely because the articles which were the object of the sales were in other States and required shipment. Had they been in New Orleans at the time of the interviews, delivery could have been called for there at once by Lehman. Under the evidence in the record there would have been no necessity for any communication between the different agents and their principals to justify the former in making a delivery.
In the McLane case the organ of the court in referring to the authority of Ruffin, who represented the Curtis & Co. Manufacturing Company in Louisiana, said: ‘‘It is admitted that Ruffin, who represented the Curtis Co., had full authority to bind it by any contract of sale which he might make, without referring his action to Missouri for its approval or ratification;” but the language used by him did not have the significance which opponent’s counsel attach to it, as evidenced by the character of their cross-examination of witnesses in this case in relation to the powers of the different agents. Ruffin’s powers were merely incidentally mentioned, as they were not the subject of contest or discussion, and allusions to them were more loosely worded than they should have been. In the case now before the court, the different agents did not assume the position of “ drummers” or “ solicitors;” they took upon themselves the position of agents of the vendors, with full, present authority to sell absolutely and at once, and they were so dealt with by Lehman. We think they had ample authority to act as they did in making the sales; but were we to assume that they had transcended their authority or disobeyed secret instructions in so doing, it would by no means follow, when their principals (called on to take action in respect to their New Orleans dealings) should affirm them, that the contracts are to be taken as contracts of the place of residence of the principals. On the contrary, the act of affirmance being of a sale made by the agent as one in presentí, the act would stand affirmed as made with its character as fixed by the parties to it when made.
The ratification would give to the act all the force of an origina authority ifi the agents to have sold at the time and id the manner *1656 and afc the place they did. Omnis ratihabitio retrotrahitur et mandato ¡equipar atur.%
The contracts made by the Louisiana representatives of the houses were not submitted to their respective houses for “acceptance,’ but for “ execution,” as we have already stated, and the authority exercised by the agents in Louisiana to sell absolutely in that State was ratified (if ratification were needed) and acted upon before Erman & Cahn had acquired any rights in the premises.
We think the contracts were Louisiana contracts, and the rights and obligations of parties controlled by the decision in 47 An., p. 135, of McLane vs. His Creditors.
We are of opinion that appellees have identified, with reasonable certainty, the property sold by them, and shown that it was struck by the privilege which they claimed thereon.
We are of opinion that the judgment appealed from is c rrect, and it is hereby affirmed.