Statement of the Case.
MONROE, J.
The defendants were indicted jointly for selling liquor without a license in the parish of Winn, and, Webb being absent, Shields was tried alone, without a jury, upon the following statement of facts ánd agreement, to wit:
“In this case it is agreed by the district attorney representing the state, and Barks-dale & Barksdale, attorneys representing the defendant George Shields, that we submit the case on the following statement of facts, leaving it to the court to decide as to whether or not, as a proposition of law, the facts thus submitted constitute the crime of retailing-spirituous liquors in the parish of Winn, or whether the parish of Ouachita is to be considered, under the law, as the place of sale, and thus determine whether the defendant George Shields is guilty as charged in the bill of indictment.
“R. P. Webb is a resident of Monroe, Ouachita parish, Louisiana, and is there engaged in the business of a wholesale and retail liquor dealer, and pays license for conducting- such business in Ouachita parish, and he pays no license in the parish of Winn, where local option prevails. George Shields, defendant on trial, is an employe and agent of said Webb, and is sent out at stated intervals to solicit and take orders for liquor; and that, within the six months next preceding the filing of the bill of indictment in this case the said Shields, acting as agent for the said R. P. Webb in the parish of Winn, solicited and took orders for whisky in less quan-r *550 tities than five gallons; that he and. the party giving the order agreed upon the kind of whisky, and the price to be paid therefor, and this order, so taken, was sent to R. P. Webb, in Monroe, where the whisky, as described in the order, was taken from the genera] stock and prepared for safe shipment. It was then delivered to the public carrier for shipment, to wit, the Southern Express Company, at Monroe, Ouachita parish, Louisiana, consigned to the party who had given the order, and the same was received at Winnfleld, Winn parish, Louisiana, by the party making the order, who paid the express charges at the point of delivery, and received his goods. It is also admitted that the order was forwarded to R. P. Webb, to be filled, and was filled by him, or his employSs, from his stock of goods in Monroe, as above set forth, and that on a subsequent visit, about two weeks later, defendant Shields, still acting as the agent and solicitor of the said Webb, received from the party who had made the order the price agreed on, in money, and that he delivered the money to Webb, in Monroe, Louisiana.”
Upon this statement, the defendant was found guilty as charged. He thereupon moved for a new trial, on the ground that, from the facts agreed on, it appeared that the sale of liquor constituting the alleged offense had been made in the parish of Ouachita, where defendant Webb pays a license. And the motion having been overruled, and the defendant having excepted, he was duly sentenced, and now presents his case to this court by appeal.
The judge a quo reached the conclusion that, upon the facts stated, it should be held, as a matter of law, “that the sale was made and completed in the parish of Winn.” We make the following excerpts from his opinion, to wit:
“The facts show that the defendant solicited the sale of the whisky, and he, together with the purchaser, agreed upon the price to be paid therefor; and this, in our opinion, constitutes a complete sale in the parish of Winn, independent of the delivery, in so far as the parties to the contract were concerned.
“As to the further consideration that the sale is not completed until the article (whisky, in this case) is measured out or segregated from the common mass or bulk, we think, after examining the authorities, that this proposition is equally untenable. * * * It is perfectly clear in this ease that the purchaser had bought but one quart of whisky, and was not interested in any other whisky, though there had been thousands of gallons of whisky in the. warehouse of Webb. He had purchased a quart — a distinct quantity — and not a number or quantity of things, subject to be weighed, counted, or pleasured, as contemplated by the Code. It is contended further that the agent did not make complete sales, but forwarded orders to his principal, in Monroe, for acceptance or rejection. We think this, also, untenable, as the agent not only selected the customer, and at least impliedly vouched for his responsibility, as a guaranty that he would pay for the whisky when received, but agreed upon the object and price of the sale, with a full and complete assent, that obliged his principal to fill the order.”
Opinion.
What the defendant, as the agent of Webb, was authorized to do, is a question of fact, upon which the finding of the trial court would be conclusive, since in criminal cases the jurisdiction of this court is confined to questions of law. And what the defendant did is also a question of fact. But whether that which he did amounted to a selling of liquor in the parish of Winn presents the question of law which is to be here considered, since it is the law which determines what constitutes a contract, by what rules such contract is to be interpreted, and what name and effect shall be given to it.
It will be observed that our Brother of the district court does not distinguish between an executory contract for the sale of an object, as yet indeterminate, and a contract whereby the' property in a specific thing passes from the owner to the buyer for an agreed price in money, paid or to be paid, nor between the delivery of a specific object, ' which has been sold, and the “appropriation” of such object, theretofore indeterminate, to an executory contract for the sale of an object answering that description. He does not find as a fact that it was the intention of the parties in the instant case that the sale which the defendant is charged with having *552 made should be perfected, either by the appropriation thereto at Monroe of a. particular lot or parcel of whisky, of the kind and in the quantity agreed on, or by the delivery of the-same to the buyer at Winnfield; but, the contract being silent in those respects, he concludes, as a matter of law, that the sale was perfected when, in Winnfield, the defendant agreed to have filled, from his codéfendant’s general stock in Monroe, an order for whisky of the kind, in the quantity, and at the price agreed on, though the particular lot or parcel of whisky to be furnished remained indeterminate. It is, however,' conceded that, in order that the sale should have been perfected, there must have been an agreement as to the particular object, and it involves a contradiction in terms to say that an object has been agreed on which remains indeterminate, whether it so remains because it has not come into existence, or because it is confused with and undistinguished from other objects of like character. The common and the civil law are equally clear upon this point, as will be seen by reference to the following excerpts from the text-books and from the Civil Code of this state:
“When the agreement is for the sale of a thing not specified, as of an article to be manufactured, or of a certain quantity of goods, in general, without a specific identification of them, or an ‘appropriation’ of them to the contract, as it is technically termed, the contract is an executory agreement, and the property does not pass. Until the parties are agreed on the specific, individual goods, the contract can be no more than a contract to supply goods answering a particular description; and, since the vendor would fulfill his part of the contract by furnishing any parcel of goods answering that description, and the purchaser could not object to them if they did answer that description, it is clear that there can be no intention to transfer the property in any particular lot of goods, more than another, Until it is ascertained which are the very goods sold. It can make no difference, although the goods are so far ascertained that the parties have agreed that they shall be taken from some specified larger stock. In such case the reason still applies. The parties did not intend to transfer the property in one portion of the stock more than another, and the law, which only gives effect to their intention, does not transfer the property in any individual portion.” Benjamin on Sales (4th Ed.)- § 352.
“Upon the making of a contract for the sale of a part of a larger mass of goods, * * * or of goods thereafter to be supplied, no particular goods, however, being-designated, it is clear that no present title-does or can thereby pass. The contract at this point is purely executory, and it cannot' be effectual to transfer title until it has become attached to some specific goods upon which it can operate. What is essential now is the appropriation of the goods to the contract.” Mechem on Sales, § 721.
“A. says or writes to B., ‘Send to me,’ or ‘Furnish me with,’ or ‘Supply me with,’ goods-of a certain character. No specific goods are mentioned or intended. No title passes until' B. accepts the order, and appropriates some-certain goods to it.” Id. 1176.
The provisions of our Civil Code applicable to the subject are as follows:
“Art. 1915. But if the object to -be given-be not a thing particularly specified, but is-uncertain, indeterminate, or described only by quantity or number, it is at the risk of the creditor only from the time he is in legal default in not receiving the thing, after it has-been tendered. A contract to deliver a certain number of bushels of wheat, to pay a-certain sum of money, or to ship a certain-number of hogsheads of sugar, without further identification, comes under this rule.”
“Art. 2458. When goods, produce, or other1 effects are not sold in lump, but by weight, tale, or measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller until they be weighed, counted or measured, but the buyer may require-either the delivery of them or damages, if there be any, in case of non execution off the contract.”
“Art. 1916. When the object of the contract, although indeterminate in itself, makes part of a whole that is determined and certain, and the whole of which it forms a part is lost or destroyed, by inevitable accident, before delivery, the loss will fall on-the creditor of the thing sold. A sale off ten bales, of the hundred bales of cotton in a particular store, is an example of this rule,, and, if all the cotton be destroyed by fire,. *554 the accident will discharge the seller from the obligation of delivering it.
“Art. 1917. In the case provided for by the last article, it must appear that the designation of the mass from which the particular object of the contract is to be taken was intended by the parties as restrictive; that is to say, that their intention was confined to that particular property and no other of the same kind. Where such intent is not clearly expressed it shall be presumed that no such restriction was intended.”
These provisions have been applied by our predecessors in this court in the following among other cases:
In Larue & Prevost v. Hugely, Blair & Co., 10 La. Ann. 242, it appeared that the defendants had made a contract for the sale, by weight, of a lot of cotton, had received $3,000 on account of the price, and had given an order for its delivery, which had been presented by the purchaser, and recognized by the press in which the cotton was stored, but that the cotton had been destroyed by fire before it was weighed. It was held that it was still at the risk of the seller, and that the buyer was entitled to recover the $3,-000 paid on account of the price.
In Goodwyn v. Pritchard, 10 La. Ann. 249, after affirming the doctrine that “in case of the sale of articles of produce, etc., sold by weight, the sale is not perfect until the articles are weighed, and until such time they remain at the risk of the seller,” the court further said, “The waiver of the benefit of the law which puts the thing sold at the risk of the seller until the weighing, etc., is the waiver of an important legal ■right; and to impair this right, under the law, an express or implied agreement to waive it should be distinctly and convincingly proved.”
See, also, Seris v. Bellocq, 17 La. Ann. 146; Rhea v. Otto, 19 La. Ann. 123; Kelham v. Carroll, Hoy & Co., 20 La. Ann. 112; Duncan v. Holt & Co., 21 La. Ann. 235; Warren & Crawford v. Kirk, 24 La. Ann. 150; Peterkin v. Martin, 30 La. Ann. 894; Paton & Co. v. Newman, 51 La. Ann. 1452, 26 South. 576.
In view of this law and jurisprudence, we are unable to concur with the judge a quo in the conclusion that a sale was perfected by the agreement whereby the defendant obtained the order for the whisky. It is true that the kind, quantity, and price of the whisky were then agreed on; but the contract still lacked one element essential to a sale, to wit, a determinate object, and no particular quart or parcel of whisky, less than five gallons, could be said to have become determinate so long as it remained confused with the general and indeterminate stock from which it was to be taken. It is true,' also, that the sale might have been, and, as a conclusion of law from the facts admitted, we think, was, subsequently perfected without the actual delivery of the whisky to the buyer; but the seller could not have been devested of, and the buyer could not have acquired, property in any particular whisky which had never been appropriated to their contract, and without such change of title there could have been no sale.
The contract at that point was therefore purely executory, and it was equally competent for the parties to have agreed that the sale should be perfected, either by the actual delivery of the whisky to the buyer in Winnfield, or by its withdrawal in Monroe from the general stock, there stored, and its delivery to the carrier consigned to the buyer. In the absence, however, of evidence as to what they intended, the law construes the contract, as made, to mean that the sale should be considered perfected by the latter method. Says one of the authors already quoted: “Where, from the terms of the ex-ecutory agreement to sell unspecified goods, the vendor is to dispatch the goods, or do anything to them that cannot be done until the goods are appropriated, he has the right to choose what the goods shall be, and the property is transferred the moment the dispatch or other act is commenced, for then an appropriation is made, finally and conclusively, by the authority in the agreement.” Mechem on Sales, § 725.
* * * * * *
“In general, that act or series of acts constitutes an appropriation which fully and finally designates the particular chattel upon which the contract is to operate.” Id. 726.
* * * * * * *
“Should the contract of purchase be sil< nt as to the person or mode by which the goods *556 are to be sent, a delivery by the vendor to a common carrier, in the usual and ordinary course of business, transfers the property to the vendee.” Id. 736.
The case of Dunn v. State of Georgia, 82 Ga. 27, 8 S. E. 806, 3 L. R. A. 199, was similar to that here presented. Kenney & Werner were liquor dealers in Atlanta, where they, kept their store and stock. Dunn, their agent and traveling salesman, obtained an order from Ward, in Douglas-ville, where prohibition prevailed, ■ for a gallon of whisky, for which Ward furnished a jug and paid the price. And the following day the whisky was delivered by the express company to Ward, who paid the charges. The court, in deciding the case, said:
“It is clear that the contract into which the parties entered contemplated no direct delivery of the whisky by the seller to the buyer in Douglasville, but a delivery to be made in Atlanta to a common carrier, and in that way delivery was actually made. The subject of the contract was no particular gallon of whisky, but a gallon of. whisky generally, which was part of the common stock of Kenney & Werner, kept for sale in the city of Atlanta. Until separation was made of some particular gallon from that stock, the precise subject of the executory contract of sale could not be identified, and until then no title to any whisky whatever passed or could pass by virtue of the contract. As soon, however, as a particular gallon of whisky was separated, in consequence of the order, from the common stock, put in a jug, and delivered to a common carrier, what was up to that time a mere executory contract of sale became an executed or actual sale, and the title to that particular gallon passed to Ward, the buyer. It was as completely his whisky in the hands of the express company the moment the company accepted and received it for carriage to him as consignee as it ever was after-wards. He became the owner by reason of the delivery made to the express company in Atlanta, and not by reason of the delivery which that company made to him subsequently in Douglasville.”
At another place in the opinion we find the following:
“If it be suggested that the evidence, as we have recited it above, leaves it doubtful whether delivery was to be made to the carrier, in Atlanta, or to the buyer, in Douglas-ville, we answer that, where two methods of delivery are open, one legal, the other illegal, the former is to be considered as the one contemplated, unless the parties by express agreement have accepted the other. Certainly is this true where the one would be innocent and the other criminal.”
In Pearson v. State of Mississippi (Miss.) 6 South. 243, 4 L. R. A. 835, the syllabus reads as follows: “A sale of liquor is complete upon delivery to the carrier, and the fact that the order for it was taken in a county where the sale was prohibited by law, and that payment for it was received there, does not make the salesman taking the order and receiving the payment guilty of selling it there.”
Whether a contract of sale is to be perfected by the “appropriation” thereto of the object or by its actual delivery to the buyer, is, as we have intimated, primarily a question of intention and of fact, and it becomes a question of law only in the absence of specific intention, or of proof of the same. In the case of State v. McAdams, 106 La. 720, 31 South. 187, therefore, the conclusion having been reached that the trial judge might have found as a fact that it was the intention that the sales there involved should be perfected only by the actual delivery of the whisky to the buyers, the further consideration of the question might perhaps have been pretermitted. In so far, however, as the views expressed in that case, and in the cases of Alling v. Bach, 2 La. Ann. 746, and Erman & Cahn v. Lehman, 47 La. Ann. 1655, 18 South. 650, upon which in the instant case the judge a quo has relied, sustain the propositions that an executory contract for the sale of an indeterminate object is perfected before such object is identified and appropriated thereto, and that, by the appropriation of the object at a subsequent time and at a different place, the contract then perfected becomes a contract of sale as of the date and of the place of the executory contract which preceded it, those views must be considered as controlled by the views herein expressed.
Whether it would be advisable, for the purpose of suppressing the traffic in intoxicating *558 liquors in those sections of the state where the citizens elect to prohibit it, for the General Assembly to impose the same penalty for the making of an executory contract for the sale as for the selling of such liquor, is a matter of public policy, concerning which this court is not called on to express an. opinion. As the matter stands, it is the sale, and not the executory contract for the sale, which is denounced as an offense; and to impose the penalty prescribed, indifferently, in the one case as well as the other, would be to go beyond the law, and to ignore a distinction which is too well recognized to have escaped the attention of the lawmakers.
It is therefore ordered, adjudged, and decreed that the judgment and sentence appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendant George Shields, ordering that he be released from custody.
BREAUX, J., concurs in the decree.
See dissenting opinion of NICHOLLS, C. J., 34 South. 677.