(47 South. 444.)

No. 17,227.

GEORGE D. WITT SHOE CO. v. J. A. SEEGARS & CO.

In re SEEGARS.

(Oct. 19, 1908.)

SALES (§ 209*) — TRANSFER OF TITLE — GOODS NOT ASCERTAINED—GENERAL STOCK.

In receiving an order for a certain quantity of goods, of a kind and at a price agreed on, to be manufactured or supplied from a general stock, warehoused at another place, the agent receiving the order merely enters into an executory contract for the sale of goods, which does not divest or transfer the title to any determinate object, and which becomes effective, for that purpose only when specific goods are thereafter manufactured or selected and segregated from the general stock, and appropriated to the contract; and, in the absence of more specific agreement, such appropriation takes place only when the goods as ordered are delivered to the public carrier at the place from which they are to be shipped consigned to the person by whom the order was given, at which time and place the sale is perfected and the title passes. Reaffirming the doctrine applied in State v. Shields et al., 110 La. 547, 34 South. 673.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 562; Dec. Dig. § 209.*]

(Syllabus by the Court.)

Application by J. A. Seegars for certiorari or writ of review to the Court of Appeal, parish of Claiborne, in an action by the George D. Witt Shoe Company against J. A. Seegars & Co., in which action judgment was had in the district court for J. A. Seegars & Co., but in the Court of Appeal for the George D. Witt Shoe Company. Judgment of the Court of Appeal reversed, and judgment of the district court affirmed.

Barnette & Roberts, for applicant. Enos Howard McClendon, for respondent.

MONROE, J. Plaintiff, a Virginia corporation engaged in the manufacture of shoes, brought suit against defendants, merchants engaged in business in Louisiana, for the price of a lot of shoes alleged to have been sold through a traveling salesman, and, asserting a vendor's privilege, caused the goods or part of them to be seized under a writ of sequestration. The sequestration was set aside by the district court on the ground that, the sale having taken place in Virginia, plaintiff had no privilege for the price. Two justices of the Court of Appeal were of opinion that the decision of the court should be controlled by the rulings of this court in McLane v. His Creditors, 47 La. Ann. 135, 16 South. 764, and Erman & Cahn v. Lehman, 47 La. Ann. 1651, 18 South. 650, and, so thinking, held that the transaction between plaintiff's salesman and defendants in Louisiana amounted to a sale, and hence that the seizure should be maintained. Justice Porter, on the other hand, was of opinion, with the trial judge, that the views expressed by this court in the case of State v. Shields, 110 La. 547, 34 South. 673, should control, and agreeably thereto that the contract before the court should be held to be a Virginia contract, under which plaintiffs were entitled to no privilege.

J. Alex Seegar succeeded to the business of the original defendants, and obtained a respite from his creditors, and he asks that the judgment of the Court of Appeal be reviewed, and that this court render such judgment as it may deem proper in the premises.

It is undisputed that plaintiff's salesman obtained the order for the goods in Louisiana, and that he wrote it down upon a form provided by plaintiff, across the face of which there is printed in conspicuous type the stipulations, or warnings:

"This sheet sets forth all conditions in regard to this sale.
"Positively no countermands accepted.
"All orders and contracts from salesmen subject to our approval."

It is also undisputed that the order was forwarded by the salesman to plaintiff in Virginia, to be there filled by the manufacture (in part) and by the selection and segregation from plaintiff's stock (for the rest), and the appropriation to the contract of such

goods in quantity, quality, and style as would meet its requirements.

It is likewise undisputed, and the evidence offered on behalf of plaintiff shows, that the bills upon which it sues have printed upon them conspicuously in red ink the stipulations, or warnings:

"Our responsibility ceases when we take Transportation Co.'s receipt 'In good order.' * * * "Pay no money to salesman without our written instructions."

The testimony adduced for plaintiff tends to show that its rule that all orders and contracts from salesmen should be subject to its approval does not apply to the particular salesman who obtained the order in this case, though it is shown by him that it does apply to 41 other salesmen employed by plaintiff. Thus he says:

"We travel 42 salesmen. The other contracts are not like mine. The men represent the concern merely on a commission basis, and have no authority except to submit the order to the house."

Testifying as to his relations with plaintiff, he says that for the first six months he worked for a commission, after which (and since 1901) he has worked for a salary, and has had entire authority to make binding sales in Louisiana. His cross-examination reads, in part, as follows:

"Q. Mr. Mitchell, in your travels as salesman for the Geo. D. Witt Shoe Company, have you ever sold any goods that were not shipped? A. I have sold goods that were not shipped as explained in the testimony of Mr. Dabney. For instance, I had no information, could gather no information. The matter was left open to me, and the orders were acted on by the credit man. Q. The credit man reserves the right to act on all orders sent in, does he not? A. Unquestionably not. Q. Then, why do you have printed across the face of your orders: 'This sheet sets forth all conditions in regard to this sale. All orders and contracts from salesmen subject to our approval'? A. This sheet is a part of a book used by Geo. D. Witt Shoe Company, and for their convenience—a duplicate of all unequivocal orders mailed to the merchants by the Geo. D. Witt Shoe Company. This is not a contract binding Seegars & Co. As a matter of fact, they have no part in it; no duplicate or record of this kind. Q. It binds the Geo. D. Witt Shoe Company? A. It binds no one.

Q. Then, that stipulation on that order is an idle stipulation? A. It is a stipulation used for the purpose—this sheet is a part of the Geo. D. Witt Shoe Company's book. Q. It is upon this sheet that you took the order for the shoes, is it not? A. It is upon this sheet. The Geo. D. Witt Shoe Company uses this sheet as a part of their book of record. Q. That is in your writing, is it not? A. This is my writing. Q. That stipulation has no bearing upon that sheet? A. None whatever for this cause: The Geo. D. Witt Shoe Company accepts of my order—the number of dozens marked on the top of the duplicate—and ratifies every agreement that I make with the customer. Q. Why do they ratify your agreement if you have absolute authority without their ratification? A. It is really not a question of ratification. It is a question of acknowledgment."

Mr. Dabney, the secretary of the plaintiff company, testifies that Mitchell—

"has authority at all times to make an absolute sale, except in such cases where the parties are not customers of the house, and he has not sufficient data to base a contract on. In such cases he takes a conditional order, and sends it in to the house for investigation and confirmation. In the case in question he had absolute authority for the reason that John A. Seegars & Co. were well known to him and to the Geo. D. Witt Shoe Company, who had previously investigated it's responsibility."

It appears, however, that the Geo. D. Witt Shoe Company made an investigation as to the responsibility of John A. Seegars & Co. after receiving the order in question, and before shipping the goods. So the witness proceeds:

"And, while it is a fact that inquiry was made as to the responsibility of John A. Seegars & Co. after the receipt of the order upon which these goods were shipped, it was done simply as a matter of record for our files, and in order that we could advise Mr. Mitchell as to any change in his financial standing as guide for his future transactions with John A. Seegars & Co."

There was a difference of opinion between the justices of the Court of Appeal constituting the majority and the two other judges who have considered the case as to the admissibility and effect of the testimony so given, the dissenting justice and the judge of the district court being of opinion that it was not admissible, and that it did not prove

that Mitchell was authorized to do more than take orders, subject to ratification.

We are inclined to think that the testimony was inadmissible; for, though the instrument upon which the order was taken down and transmitted was not signed by Seegars & Co., it was exhibited to them and entered into, and formed part of, the contract which resulted in the order. It is unnecessary, however, to decide the question, since we are clearly of opinion that the explanations offered by plaintiff's witnesses do not explain, and that the order, as sent, left it optional with plaintiff to fill it or not, as it thought best. The idea that plaintiff would have felt bound to fill it if the inquiry made after its receipt had cast a doubt upon the financial ability of Seegars & Co. cannot reasonably be entertained. But it is wholly immaterial, for the purposes of the main question, whether Mitchell was authorized to make a definitive contract of sale or not, since the only contract that he was in a position to make was an agreement to sell or an executory contract of sale. He says that plaintiff sends out 375 samples of shoes, and as he was offering to sell by sample shoes, part of which had not been manufactured and the rest of which were incorporated in plaintiff's stock in Lynchburg, Va., it was impossible that he and Seegars & Co. should at that time have agreed upon the specific objects, the title to which was to pass, and hence there could have been no sale. He and Seegars & Co. might have agreed, and did (in effect) agree, that the identification of the objects and their appropriation to the contract necessary to make a sale should thereafter be made by the plaintiff, acting for itself and for Seegars & Co., and the legend printed in red ink on plaintiff's billheads ("Our responsibility ceases when we take Transportation Co.'s receipt 'In good order' ") indicates plaintiff's idea of the moment at which such identification and appropriation would become effective. The question presented was carefully considered in the case of State v. Shields et al., 110 La. 547, 34 South. 673 (in which it was absolutely necessary that it should be decided), and it was there held that in receiving an order for a quantity of goods, of a kind and at a price agreed on, to be supplied from a general stock, warehoused at another place, the agent receiving the order merely enters into an executory contract for the sale of the goods, which does not devest or transfer the title to any determinate object, and which becomes effective for that purpose only when specific goods are thereafter appropriated to the contract; and, in the absence of a more specific agreement on the subject, that such appropriation takes place only when the goods as ordered are delivered to the public carriers at the place from which they are to be shipped, consigned to the person by whom the order is given, at which time and place, therefore, the sale is perfected and the title passes.

Referring to the case relied on by the learned justices by whom the judgment here complained of was rendered, this court (in the case above referred to) said that in so far as the views expressed in those cases sustained the proposition—

"that an executory contract for the sale of an indeterminate object is perfected before such object is identified and appropriated thereto, and that, by the appropriation of the object, at a subsequent time and at a different place, the contract then perfected becomes a contract of sale as of the date and of the place of the executory contract which preceded it, those views must be considered as controlled by the views here expressed."

And the views thus expressed (in the Shields Case) have since been approved or affirmed in the Succession of Welsh, 111 La. 804, 35 South. 913, 64 L. R. A. 823, and City of Lake Charles v. Equitable Life, etc., 114 La. 841, 38 South. 578, and are now reaffirmed.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal, here made the subject of review, be annulled, avoided, and reversed and the judgment of the district court affirmed, all at the cost of the Geo. D. Witt Shoe Company.