The SINGER COMPANY/SINGER
FURNITURE COMPANY

v.

Asa WILLIS, Trustee in Bankruptcy for
Fulkerson Furniture, Inc.    (In
Bankruptcy No. 76–1380)

Civ. A. No. 770847.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 26, 1977.

Henley A. Hunter, Eatman & Hunter, Shreveport, La., for plaintiff.

Roy L. Beard, Shreveport, La., for defendant.

## RULING ON APPEAL OF BANKRUPT-CY JUDGE'S RULING

DAWKINS, Senior Judge.

The Singer Company/Singer Furniture Company (Singer) appeals [1] from the Bankruptcy Judge's order declaring its claims Nos. 1 and 11 to be general and unsecured. Jurisdiction is conferred upon us by 28 U.S.C.A. § 1334.

Fulkerson Furniture, Inc. (the Bankrupt), filed a voluntary petition In Bankruptcy on August 13, 1976, and a supplemental peti-

tion on August 20, 1976. Singer filed proofs of claims allegedly secured in part by a vendor's privilege [2] on merchandise sold to the bankrupt.

The Trustee objected to Singer's claim of security and, after a hearing, the Bankruptcy Judge agreed, refusing to recognize the claimed vendor's privilege. On the basis of the testimony of witnesses and documents presented in evidence, the Bankruptcy Judge found the following facts:

"(1) A salesman for the creditor made calls upon the bankrupt in Shreveport, Louisiana (and on occasion outside Shreveport at a trade show). Fulkerson Furniture Company, Inc., the bankrupt, placed orders with the salesman on a written order form which contains the following language, 'ORDERS TAKEN SUBJECT TO ABOVE TERMS AND OUR ACCEPTANCE'. On each and every occasion, the written order was sent by the salesman to the office or plant of Singer OUTSIDE the State of Louisiana.

"(2) Acceptance and approval, or rejection of the order, was made by The Singer Company/Singer Furniture Company after it was received by Singer at its home office outside the State of Louisiana.

"(3) No consent was given by Singer to the order until it was received in their office or plant outside the State of Louisiana.

"(4) No consent was given by Singer inside the State of Louisiana for any of the orders by the bankrupt, which are the subject of the claims herein.

"(5) The Singer Company/Singer Furniture Company did exercise its right of refusal to consent to orders sub-

1. Rule 801, Rules Bankr.Proc., 11 U.S.C.A.

2. The Louisiana vendor's privilege is provided for in Louisiana Civil Code Article 3227, which states in pertinent part:

"He who has sold to another any movable property, which is not paid for, has a prefer-

ence on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser."

mitted by the bankrupt on the forms referred to above, in instances which occurred prior to the bankruptcy.

"(6) No security documents were ever executed by the parties or requested by the creditor."

The record before us contains a partial transcript of the testimony of Singer employee, William Rollert, before the Bankruptcy Judge. Because of malfunction of the recording equipment, the entire hearing was not transcribed. However, counsel entered a stipulation of facts regarding the unrecorded testimony of Rollert and William G. Foster, another Singer associate. Also in the record are the original and amended bankruptcy petition, Singer's proofs of claims Nos. 1 and 11, and copies of statements of account, invoices, orders, and agreements between Singer and the Bankrupt.

The record does not disclose whether Singer has offices or manufacturing plants in Louisiana. In any event, Singer's present creditor status arose out of a series of transactions between the bankrupt and Singer's out-of-state home office. It appears that Singer's salesmen called on the bankrupt at his place of business in Louisiana and at out-of-state trade shows. The salesmen obtained orders for furniture and related items which they mailed or phoned to their home office. Orders so received were subject to Singer's rejection. Approved orders were removed from stock and delivered F.O.B. at the out-of-state manufacturing plant. Freight charges to Shreveport were paid by the bankrupt.

■ We must accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous. Rules Bankr.Proc. rule 810, 11 U.S.C.A.

Singer apparently contests the Bankruptcy Judge's factual findings 2 through 5 concerning acceptance of the bankrupt's orders. It is not disputed that Singer had the power to reject or accept orders upon their receipt at its home office outside of Louisiana. The argument is that Singer seldom, if ever, exercised this authority to cancel or modify the bankrupt's orders. Accepting, *arguendo*, this contention as true, this does not contradict the Bankruptcy Judge's findings. The record is clear that Singer's consent to the bankrupt's orders was accomplished by out-of-state approval, tacit or otherwise. Singer's salesmen unquestionably lacked authority to bind their principal by their own act(s). Review of the evidence convinces us that the Bankruptcy Judge's findings of fact are not clearly erroneous; and, proceeding now upon that basis, we consider Singer's claim of security.

■ The Louisiana vendor's privilege, if it arises, is valid as a statutory lien as against the Trustee, *In re Trahan*, 283 F.Supp. 620 (W.D.La.1968). Louisiana law controls application of this state-created privilege. *Ford Motor Credit Company v. Gentry (In re Wallace Lincoln-Mercury Company, Inc.)*, 469 F.2d 396 (5th Cir. 1972); *West Publishing Company v. Willis (In re Hoover)*, 447 F.2d 195 (5th Cir. 1971).

■ Louisiana's vendor's privilege, created by La.Rev.Civ.C. Art. 3223, applies only to sales completed within Louisiana. *Commercial Credit Corp. v. Bernard (In re Leggett)*, 505 F.2d 120 (5th Cir. 1974); *West Publishing Company v. Willis (In re Hoover), supra; Modern Farm Service, Inc. v. Ben Pearson, Inc.*, 308 F.2d 18 (5th Cir., 1962); *Succession of Welsh*, 111 La. 801, 35 So. 913 (1904).

■ A sales contract is considered completed *where an offer is accepted* or when the bargain becomes *mutually binding* upon *both* parties.[3] *Modern Farm, supra; Laclede Steel Co. v. Silas Mason Company*, 67 F.Supp. 751 (W.D.La.1946); *Williams v. Travelers Insurance Company of Hartford, Conn.*, 19 So.2d 586 (La.App. 1st Cir. 1944).

---

**3.** A contract of sale is perfected when there is consent on the object to be sold and the price. La.Civ.C. Arts. 2439, 2456. Before binding agreement on these basics is entered, although there may be some form of contract created, there is no sale. *State v. Shields*, 110 La. 547, 34 So. 673 (1903).

■ Thus, when acceptance of an offer is made outside Louisiana, the sale was not completed in this state, and the vendor's privilege does not arise. *Whiston v. Stodder,* 8 Mart. (O.S.) 95 (1820); *Claflin v. Meyer,* 41 La.Ann. 1048, 7 So. 139 (1889); *G. A. Gray Company v. Taylor Bros. Iron-Works Co.,* 66 F. 686 (5th Cir. 1894).

Some Louisiana Courts have refused to recognize a vendor's privilege where sales were made out of a stock or mass of goods and the particular items sold were segregated from the mass outside Louisiana. *George D. Witt Shoe Co. v. J. A. Seegars Company,* 122 La. 145, 47 So. 444 (1908).[4] The rationale of these cases is that, since a sale is not perfect until there is total agreement upon the price and object to be sold, there is no sale until the particular things to be conveyed are identified by being separated from the mass. Because contracts are deemed made where the last formative act transpires, according to *Witt,* the contract is perfected where the goods are identified *and* segregated.

■ Because we find that the final sales contract acceptance by Singer took place outside Louisiana, we need not belabor *Witt* further. Suffice it to say that any identification of goods, or separation from a mass of goods, sold to the bankrupt did not take place in Louisiana, and for that reason the sales did not become Louisiana contracts.

Singer's actions plainly decry any intent to transact sales under Louisiana law. Their only contact with Louisiana was through *agents lacking authority to contract* in Singer's name.[5] Orders secured by these salesmen were subject to out-of-state approval so any resulting sales were perfected outside Louisiana. The conclusion is inescapable that the finality of sales by Singer was accomplished outside Louisiana

and thus no vendor's privilege arose upon the goods conveyed.

■ It is contended that failure to recognize Singer's secured status has the effect of impairing the obligations of contracts in contravention of the United States Constitution, Article 1, § 10, Clause 1.[6] We fail to discern what bearing this constitutional prohibition has upon the present facts. In any case, there is no question but that this clause is not violated by a judicial determination. *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) reh. den. 346 U.S. 841, 74 S.Ct. 19, 98 L.Ed. 361 (1953); *Mariniello v. Shell Oil Company,* 511 F.2d 853 (3rd Cir. 1975).

The findings made by the Bankruptcy Judge are correct and his order denying secured status to Singer's claims hereby is affirmed. Counsel for the Trustee shall submit a written judgment within five days hereof.

---

4. See, *State v. Shields, supra; Succession of Welsh, supra.*

But see *Ford Motor Credit Co. v. Gentry (In re Wallace Lincoln-Mercury Co., Inc., supra.)*

5. We are not presented with the circumstance of an agent soliciting orders fully binding upon his principal without acceptance. *Newman v. Cannon,* 43 La.Ann. 712, 9 So. 439 (1891);

*McLane v. His Creditors,* 47 La.Ann. 134, 16 So. 764 (1895); *Erman v. Lehman,* 47 La.Ann. 1651, 18 So. 650 (1895); *Hickman v. Dahlen,* 19 La.App. 723, 122 So. 85 (2nd Cir. 1929).

6. "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."