## No. 10,432.

### H. B. CLAFLIN & CO. VS. D. A. MAYER.

Where an agent in New Orleans, for non-resident dealers, has authority only to exhibit samples and receive orders which he communicates to his principal for acceptance or rejection; held that an order so transmitted was similar in every respect to an order to purchase sent direct by the buyer to the seller, and when accepted and filled and the goods delivered to the carrier and insured by the buyer that it was a contract where said order was accepted and filled and the goods delivered.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Percy Roberts* for Appellants.

*W. S. Parkerson, Andrew H. Wilson, George O. Walshe* and *James O. Moise* for Appellees.

#### ON RULE TO RANK CREDITORS.

The opinion of the Court was delivered by

MCENERY, J. The plaintiffs, H. B. Claflin & Co., attached the merchandise and stock of goods of the defendant, in the city of New Orleans. Other creditors proceeded against the defendant, some by attachment, and others sequestered his stock, claiming a vendor's privilege thereon.

On a rule to rank the creditors taken by Claflin & Co., there was judgment sustaining the privileges of the creditors who sued out writs of sequestration. From this judgment the other creditors have appealed. The question presented in this appeal is whether the creditors who

Claflin & Co. vs. Mayer.

sued and sequestered and claimed the vendor's privilege, executed their contracts here or elsewhere, out of the State of Louisiana.

It is conceded that under the law in the States where the creditors reside there is no vendor's privilege resulting from the contract. Hence, the privilege springs from the law of Louisiana, and if the contracts were executed in this State the vendors have a privilege on the goods sequestered and identified by them.

The only creditors who have identified the goods sold by them to defendant are Geo. A. Plummer and the Metropolitan Knitting Company. All goods were unpacked and mixed with defendants' general stock, and had been so mixed for several months. There is no evidence identifying the goods of the other creditors. And in relation to the contract for the purchase of goods from these creditors, Mayer, the defendant, says he bought some by letter, some through an agent of his in New York, some by sample, and others personally in New York. He was unable to identify those purchased by sample. The sheriff's return shows which goods were seized under the writs and sold upon which the sequestrators claimed their privilege, but the goods were not identified with that certainty that the law requires. Mayer, in his evidence, states he saw them taking out goods which were not purchased from these plaintiffs and others for which he had paid. This plainly establishes the fact that the evidence upon which the plaintiff relied for identification was unsatisfactory. Admitting that the contracts of these creditors were completed in Louisiana, which is very doubtful, they clearly have no privilege on the goods sequestered, because they have not been identified.

Plummer and the Metropolitan Knitting Company had agents in New Orleans, who exhibited samples to the defendant, from which he made selections and based his orders. These orders were communicated by these agents to their principals. It appears from the evidence their authority was confined exclusively to soliciting orders, without any power to bind their principals, who could accept or reject the offer to buy which they received through their agents in New Orleans. The completion of the contract, the acceptance of the price and conditions depended entirely upon the non-resident creditors. Where the agent exhibited the samples, under their restricted authority, and transmitted the orders to their principals, there was no obligation created which the buyer could enforce. Where the proposal to purchase as forwarded by the agent, was accepted by his principal, there was then a contract created which the buyer in New Orleans could enforce.

There was no stipulation for delivery in New Orleans, and the presumption is that the goods were to be delivered in New York, where

they were situated. They were delivered to a carrier at defendants' risk, as he had under an open policy insured the goods. Had they been lost or destroyed in transit, he would have undoubtedly been the proper party to collect the insurance.

Several cases are relied upon by the plaintiffs in the sequestration suits, to which they refer.

In Onerend, Garny & Co. vs. Robinson & Olroyd, 21 Ann. 728, the goods were shipped to an agent in New Orleans with special instructions not to deliver them to the defendant until the latter should have complied with certain specified conditions about furnishing security. The sale was completed in Louisiana, and became a Louisiana contract.

In Millard vs. Nihoul, 21 Ann. 412, the sale was made by sample exhibited, the goods selected and the seller by his agent in New Orleans promised and agreed to *deliver them in New Orleans.* The agreement was made in New Orleans, and the goods delivered in New Orleans, and it was executed in New Orleans and became a Louisiana contract. And to the same effect is the doctrine declared in McIllvane & Spiegal vs. Segavre & Godchaux, 36 Ann. 359. The contract clearly stipulated that the boilers purchased should be delivered on the plantation of defendant, Legasse. The acceptance of the boiler by Mr. Legarre was a suspensive condition, stipulated for in the contract "under which it could not be executed before delivery of the things sold in Louisiana."

The warranty resulting from a sale by sample of the manufacturer for instance, against secret defects of manufacture and the merchant as to quality, are not of the essence of a contract or essential to it.

This warranty in fact is implied in every sale, and may be modified, or renounced at the will of both parties without changing the character of the contract or destroying its effect. R. C. C. Art. 1764, sec. 2.

There is also in a sale by sample an implied condition that the buyer shall have a fair opportunity of comparing the bulk with the sample, and a refusal to allow this, will justify the buyer in rejecting the contract. Benj. Sales-Bennett, Ed., sec. 649.

This implied condition, unless expressly stipulated and renounced as a suspensive condition preventing the executing of the contract before delivery, cannot prevent the execution of the contract at the place of final acceptance of the proposal to buy.

If the sale had been in New York by samples exhibited there, and the price paid and goods delivered immediately without opportunity to examine them immediately before shipment, the implied condition for inspection at New Orleans would still exist. If the goods were not accord-

ing to quality as represented, the buyer could sue for a dissolution of the sale or return the goods to the seller.

This implied conditions in a sale by sample is not the view and trial to the satisfaction of the buyer, contemplated in Art. 2460, R. C. C., which operates as a suspensive condition of the sale.

In the instant case there is no difference between the proposal to purchase forwarded by the agent and one transmitted through the mails by the buyer. It is not doubted that purchases by order by the buyer himself, become contracts of the place where the order is filled. The agents' authority here was limited and restricted. He could not bind his principal and his sole duty was to exhibit the samples, receive and forward orders for goods. In this case the order was filled, the goods delivered where the contract was consummated, and the goods insured by the buyer. The title to the goods was in the defendant the moment the goods were set aside and placed at his risk.

There seems to be no opposition to the general privilege for clerk's hire, presented by A. Costenado. The judgment appealed from is therefore amended by rejecting the vendors privilege on the goods sequestered by the Metropolitan Knitting Company, Wachunutt's Shirt Company, George A. Plumner, Noyes, Smith & Co., James Talcott, and in other respects it be affirmed, the appellee's herein to pay costs of appeal.