(35 South. 913.)

No. 14,787.

Succession of WELSH.

(Feb. 1, 1904.)

SALE—VENDOR'S PRIVILEGE—PAROL EVIDENCE.

1. Where an order for goods is taken by a drummer in this state, subject to the approval of his principal, and is transmitted to the principal in another state, and is there approved and there filled by the segregation and shipment of the goods, the sale is a contract of the domicile of the vendor, and does not give rise to a vendor's privilege on the goods, unless such privilege exists under the laws of such other state.

2. Aliter, where the sale is consummated by the segregation of the goods from a stock of goods in this state.

3. Where the order was in writing, it evidences the contract, and its terms cannot be varied or contradicted by parol.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Conrad De Baillon, Judge.

In the matter of the succession of C. J. Welsh. From the allowance of certain vendor's privileges and the denial of others, the administrator and opponents appeal. Modified.

Robert Montgomery and Shelby Taylor, for appellants. Story & Pugh, for appellee.

PROVOSTY, J. The administrator having filed his final account, with the Texas Moline Plow Company, and the Southern Rock Island Plow Company, of Dallas, Texas, and T. & H. Smith & Co., of Dakin, Ill., as ordinary creditors thereon, these parties filed oppositions, claiming the vendor's privilege on the proceeds of goods sold by them to the deceased, and inventoried and sold with the other effects of the succession, but separately, after having been identified by them as their goods, yet unpaid for. The administrator denies the privilege, because, he says, the sales were made at the domicile of the opponents in other states, and are governed by the laws of those states, which do not recognize the privilege in question.

In their brief the counsel for the administrator say that "the question in their several oppositions to be determined by this court is whether the contracts sued on are Louisiana contracts." We are not called upon, therefore, to look into the facts of the case except in connection with this question.

In each of the cases the goods were sold through a drummer. The drummer took from the deceased, Welsh, who was a going merchant at Crowley, La., an unconditional written order for the goods, accepting same subject to approval by his principal, and the goods were shipped in due course. One of the shipments by the Texas Moline Plow Company was made from Gueydan, La., and will be considered later separately.

The case is undistinguishable from that of

Claflin v. Mayer, 41 La. Ann. 1048, 7 South. 139, and under the doctrine of that case. the privilege is denied.

In each of the cases it was sought to be proved by parol evidence. that the traveling agent had full·power to bind the principal, and that the stipulation touching approval by the principal was a mere empty or ac-cidental and meaningless formality. But this parol evidence was properly objected to as contradicting or varying the written contract.

The lower court accorded a privilege to the Texas Moline Plow Company, and rejected the two other oppositions. Doubtless this privilege was thus accorded on the strength of the testimony of the traveling agent of the opponent company to the effect that the consignee, Welsh, refused to accept the goods, and that thereupon an arrangement was made by which he kept them as goods belonging to the Texas Moline Plow Company, to be paid for when sold; and that later in the fall, after some of the wagons and one of the buggies had been sold, and a settlement being asked for them, Welsh proposed that, if certain discounts were made, he would take the goods, and give his notes for the price, and that this was done.

Counsel for the administrator says that, as against a dead man, whose lips are sealed, this testimony must be taken cum grano salis, and the situation impresses us in the same way. The written contract stipulated that the order was not subject to revocation except upon payment of 20 per cent. of the net amount of the goods. The order was a considerable one—$1,219. The goods had been shipped from another state, and the consignee was a merchant in regular business. The manager, the assistant manager, and the adjuster of the company seem to have known nothing of this taking back the goods and subsequently selling them, for they make no allusion to it in their testimony. Then, again, the witness says that the goods thus refused to be accepted were sold to Welsh "later in the fall," and that "certain discounts" were made. Now, the notes were taken for the whole price—that is to say, apparently, without any discount having been made; and the short time intervening between the taking of the notes and the shipment of the goods would hardly justify the expression "later in the fall." The notes were made on October 15th, and the goods were invoiced at Dallas, Tex., on September 23d. Allowing a few days for them to reach destination, Crowley, La., and barely 20 days intervened between the alleged refusal to receive them and the alleged resale of them later in the fall.

The testimony would more nearly fit the shipment made from Gueydan, La. The date of that shipment was August 27th, and the date of the note given for it is November 17th. The note is for an amount less than the amount of the invoice, and the goods included buggies, and it is said that Welsh advanced as a reason for not receiving them that they were damaged: Here was a reason for refusing to accept, and here also is a discount, and also a delay such as might justify the expression "later in the fall."

Be the foregoing as it may, however, we have concluded to allow the privilege on this shipment from Gueydan, La., for another reason. The sale as to it was consummated at Gueydan, La., by the segregation of the particular goods from the stock there on hand, and thus, under the doctrine of State v. Shields, 110 La. 547, 34 South. 673, was a Louisiana contract.

The judgment appealed from is amended so as to reduce it to $500, with 8 per cent. per annum interest from December 9, 1901, the amount for which a privilege is allowed to the Texas Moline Plow Company, and as thus amended it is affirmed. The opponents to pay the costs of this appeal.

NICHOLLS, C. J., absent, sick.