THE ROSS MILLING COMPANY v.
LEONARDO GILIBERTI

(October 5, 1925, Opinion and Decree)

(*Syllabus by the Court*)

1. Louisiana Digest—Obligations—Par. 74,
76; Sales—Par. 166, 167.

In the absence of fraud or error, a clause
in a written contract of sale stipulat-
ing against any verbal condition or
warranty tending to modify the con-
tract should be strictly enforced be-
tween the parties or their agents.

2. Louisiana Digest—Evidence—Par. 58;
Sales—Par. 285.

Where the sole defense in suit upon a con-
tract involving the sale of a com-
modity is that the seller warranted its
fitness for manufacture of a specific
product, the party so pleading must
establish such special defense by a
preponderance of evidence or else pay
the damages suffered for his rejection
of the shipment.

(Civil Code, Arts. 1934, 2232, 2276. Editor's
note.)

Appeal from the Civil District Court of
the Parish of Orleans, Division "F". Hon.
Percy Saint, Judge.

This is a suit upon a contract resulting
in a loss suffered by the plaintiff,·the cause
of defendant's rejecting of a shipment of
merchandise.

There was judgment for plaintiff and
defendant appealed.

Judgment affirmed.

P. E. Edrington, Warren V. Miller, of
New Orleans, attorneys for plaintiff, ap-
pellee.

Scott E. Beer, of New Orleans, attorney
for defendant appellant.

BELL, J. This suit is upon a contract
resulting in loss suffered by plaintiff be-
cause of defendant's rejection of a certain
shipment of "Magnolia" flour, sold de-
fendant by plaintiff's agent at New Or-
leans, under a written contract there ex-
ecuted, said contract having been subse-
quently confirmed by the president of the
corporation at Ottawa, Kansas. Defendant
admits the contract and that he rejected the
shipment, and avers as his sole defense
that the flour was unfit for the manufac-
ture of macaroni, the purpose for which
it was purchased; that plaintiff's agent at
New Orleans knew the purpose for which
the flour had been ordered, and willfully
misrepresented to defendant that it could
be so used, thus inducing him to purchase
the brand referred to.

There was judgment for plaintiff in the
full sum claimed, to-wit: $1205.21. No con-
tention has been made on behalf of de-
fendant and appellant as to the quantum
allowed. The case is, therefore, resolved
into a simple question of fact as to
whether the representation contended for
by defendant was actually made by plain-
tiff's agent, with intent to deceive the de-
fendant, or fraudulently induce him to
purchase the flour. The contract before
us is in the form known as the "Millers'
National Federation Uniform Sales Con-
tract", the first and dominant printed
clause of which reads as follows:

"The Ross Milling Company, of Ottawa,
Kansas, sell (s) and L. Giliberti buy (s)
the following commodities, subject to the
terms and conditions stated herein and
printed on the back hereof, which terms
and conditions are binding on both parties
to this contract and cannot be modified ex-
cept by written consent of both parties,
and no verbal conditions, warrants or modi-
fications are valid."

Timely objection was made at the in-
cipiency of the trial of this case to the
introduction of any verbal testimony tend-
ing to show warranties or guarantees not
contained in the written contract. The
case might have been greatly simplified by
what we believe would have been a proper

maintenance of this objection, there being no material allegations of fraud or error in defendant's pleadings. (Oliver vs. Hedden, 4 Orl. App., 367; Succession of Welsh, 111 La. 801, 35 South. 913; Pease vs. Fitzgerald, 161 Pac. 506; Tockstein vs. Pacific Kissel Kar Branch, 164 Pac. 906). However, the learned judge of the District Court saw fit to admit all evidence as to the alleged warranty by the plaintiff's agent, and has concluded, after considering the lengthy testimony taken in this case, that no such warranty was given. The burden of establishing such a defense was upon defendant. (R. C. C., Art. 2232; Palfrey vs. Stinson, 11 La. 77; Pagett vs. Curtis, 15 La. Ann. 451; Scovel vs. Gill, 30 La. Ann. 1207.) His own testimony is the only affirmative evidence to the effect that plaintiff's agent verbally guaranteed the flour for use in manufacturing macaroni. The agent, on the other hand, swears that no such guarantee was ever made. No evidence was offered corroborative of defendant's contention. In other parts of his testimony he swears that he was made to sign the contract, thus implying duress, which has not been pleaded, and also that he did not know its contents because he could not read or understand the English language. Such excuses are of no avail. (Bagneris vs. Oddo, Orl. App. 7471; DeSoto Building Co., Ltd., vs. Kohstamm, Orl. App. 7627.)

By record admissions it is shown that defendant was placed in default several times after the timely arrival of the shipment at New Orleans and before its resale by plaintiff, who attempted to minimize the loss. It appears that defendant failed to respond to these notices or to honor the sight draft, with bill of lading attached, or to notify within reasonable time, plaintiff or its local agent, that the flour was rejected because not up to the alleged warranty. We finally note that without examination or inspection of the shipment defendant attempts to justify its rejection upon the assumption that it was unfit for the purpose intended, because another local dealer, with whom he formed a partnership several months afterwards, also purchased flour of the same brand from the plaintiff company and had found it unsatisfactory for the manufacture of macaroni.

There is nothing in the contract itself which discloses the purpose for which the flour was to be used. The evidence shows that, at the date of sale, defendant was not a manufacturer of macaroni, but sold flour in connection with his retail grocery business, and also to those engaged in the bakery business. Both the president of the plaintiff corporation and its local agent testified that flour of the same brand as that sold to defendant had been sold and used in New Orleans and elsewhere for macaroni purposes, and it was of high gluten content, even higher than other brands shown by these witnesses to be satisfactory for manufacturing macaroni. There is abundance of proof that a sharp decline in the flour market occurred shortly after defendant's purchase and continued beyond the date at which the shipment was resold. This fact may or may not have induced the defendant to reject the shipment. We are, however, unable to find any just or legal grounds for his action. There is nothing before us which satisfactorily supports the special defense pleaded in this case.

The judgment appealed from is correct and should be affirmed.