No. 2114

Second Circuit

—  —

## PAGE & HILL CO. v. SHREVEPORT-ELDORADO PIPE LINE CO.

—

(June 30, 1926. Opinion and Decree.)
(Oct. 4, 1926, Rehearing Refused.)
(Nov. 3, 1926. Writs of Certiorari and Review Denied by Supreme Court.)

—

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Sales—Par. 46, 58; Obligations—Par. 97.**
The taking of an order for poles was an executory contract of sale, but when the order was accepted by the seller and the poles appropriated to the order and delivered to the common carrier, the contract became a completed sale at the place of shipment and thereafter the order could not be countermanded by the buyer.

2. **Louisiana Digest—Sales Par. 148, 149; Obligations—Par. 169.**
Where a contract of sale has been executed by the seller by delivery of the goods to the shipper but the buyer refuses acceptance of them, the remedy of the seller is for the enforcement of the contract and not a suit in damages.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Page and Hill Company against Shreveport-Eldorado Pipe Line Company. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Wise, Randolph, Randall and Freyer, of Shreveport, attorneys for plaintiff, appellant.

Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for defendant, appellee.

ODOM, J.   This is a suit to recover $912.00 for a lot of cedar poles which plaintiff shipped to defendant on December 6, 1922.

In answer, defendant denied that it ordered the poles from plaintiff and, on the contrary, alleged that it ordered the poles from Interstate Electric Company of Shreveport, Louisiana, and that it had no contractual relations with plaintiff and owed it nothing.

Defendant further alleged that it ordered the poles from Interstate Electric Company because of its representations that it had the poles at Kansas City and could ship them from that point immediately and make quick delivery and for that reason alone it ordered them from said Interstate Electric Company.

Paragraph "V" of defendant's answer reads—

"Your defendant denies that it ever ordered any poles from said plaintiff, but that its contract was with the Interstate Electric Company as aforesaid, and denies that it is under any obligation to said plaintiff to pay it for the same.

"And further answering the plaintiff's demands, your defendant shows that while it had some communications with said plaintiff with reference to said shipment, it at all times believed and considered that it was dealing with the Interstate Electric Company as the principal and was bound to pay, if at all, the said Electric Company for said poles; that while said poles were ordered on December 2, 1922, for a rush order, the same did not arrive at Eldorado, Arkansas, until January 10, 1923, or more than thirty (30) days after the same had been ordered, too late for it to use them as it had been forced to purchase them elsewhere."

In paragraph "III" of the answer, it is alleged that on December 9, 1922—

"It notified the Interstate Electric Company to cancel such order, and the Electric Company wired said plaintiff cancelling said order; that it had no dealings with said plaintiff except as set forth and considered it was dealing entirely with the Interstate Electric Company, from whom it contracted to purchase said poles, and said Interstate Electric Company recognized the right of your defendant to cancel said order, and advised the plaintiff of the cancellation thereof, and it is not indebted to the plaintiff in any sum because its contract and agreement was made with the Interstate Electric Company and not with said plaintiff."

The lower court rejected plaintiff's demands, but reserved its right to sue defendant for damages, and defendant has appealed.

### OPINION.

It will be noted by the above references to and quotations from defendant's answer that it interposed the sole defense that it had not purchased the poles from plaintiff and therefore it owed plaintiff nothing.

Incidentally it is set up in the answer that the poles were to be shipped from Kansas City in order that quick delivery might be made and that otherwise defendant would not have ordered them from the Interstate Electric Company.

The testimony introduced on trial shows that the only point stressed was that the poles were ordered from the Interstate Electric Company and that the order was cancelled.

However, the brief filed in this court by counsel for defendant indicates that that defense has been abandoned entirely, for counsel state—

"The defense is, that this is an executory contract of sale with a suspensive condition; that the only right plaintiff had was to sue for damages for breach of contract and not for the purchase price of the goods."

And further quoting from said brief—

"Plaintiff should have brought this suit for damages. He did not do so."

And it is further stated in defendant's brief that in the case at bar the defendant had agreed to buy from plaintiff certain telegraph poles delivered at Eldorado. The argument throughout the brief is that the contract was executory and did not amount to a sale; therefore, when defendant cancelled the order, plaintiff's only remedy was to sue for damages, and the only authorities cited are in support of that theory.

Under the strict rules of pleading and practice, the only question which the court should consider are those raised by the pleadings as filed or as they may be amended or enlarged by the introduction of testimony without objection.

However, as the lower court seems to have based its decision upon the point raised in defendant's brief and as counsel

for plaintiff urge no objection thereto, we shall pass upon that point as well as that specially urged in the pleadings.

On the point raised by defendant's answer, we find that the Interstate Electric Company of Shreveport was at the time of the transaction agent for Page & Hill Company, the plaintiff, with authority to solicit orders for cedar poles in this territory, as shown by contract dated August 1, 1922, filed in evidence. And while Mr. Gray, who represented defendant in giving the order for the poles, testified that all his dealings were with Interstate Electric Company, he did not say that he was not aware of this agency when he gave the order. But whether he knew that or not we think is immaterial, because subsequent to the date on which the order was placed Gray was informed that the order had been placed with plaintiff and he, Gray, representing defendant, took up negotiations directly with plaintiff, as is shown by his telegram dated December 7, 1922, which reads as follows:

"Page and Hill, Minneapolis, Minn. We placed order for car of poles with you through Interstate Electric Company upon being guaranteed shipment from Kansas City. We are greatly disappointed and inconvenienced by shipment having been made from other point. We expect you to do everything possible to rush car to destination. (Signed) Shreveport-Eldorado Pipe Line Co."

This telegram shows conclusively that defendant knew that it was dealing with plaintiff, which completely disposes of the defense raised in the answer, and it also disposes of defendant's contention, suggested in answer but not contended for in brief, that it should not accept the poles because they were not shipped from Kansas City as was originally agreed upon; for by communicating with plaintiff, as defendant did in the telegram, defendant recognized the

fact that the poles were shipped from another point and tacitly at least agreed to accept them. It thereby waived the other defense.

Mr. Gray admitted that he sent the telegram of the 7th.

There are also numerous letters in the record written by plaintiff to defendant which Mr. Gray admits he received.

With this testimony in the record, it is readily understood why counsel are shifting their position and seeking another defense.

Referring now to the point raised and stressed in counsel's brief that this was an executory contract and that the transaction did not ripen into a sale, we have reached the conclusion that the testimony does not support their contention.

The order for the poles was placed with plaintiff by defendant through plaintiff's representative by telegram as follows:

"Shreveport, La., 11-29-22. Page & Hill Company, 717 Bryant, Bldg., Kansas City, Mo. Ship Shreveport-Eldorado Pipe Line Company, Eldorado, Arkansas, three hundred fifty, twenty foot five inch and seventy-five twenty-five foot five inch Northern White Cedars. Ship immediately from stock over Missouri Pacific. Trace same as this is very urgent.

(Signed) "Interstate Electric Company."

Upon receipt of this telegram, at plaintiff's Kansas City office, the order was repeated by wire to plaintiff's Minneapolis office. The order was there accepted and the poles loaded on car December 6th and delivered to a railroad company which issued its uniform bill of lading therefor on the 7th of December, the bill of lading showing that the shipment was consigned to defendant at Eldorado, Arkansas.

The situation presented therefore is that the poles were ordered by defendant, the

order was accepted by plaintiff, and the poles segregated from plaintiff's common stock and delivered to a common carrier and consigned to defendant.

This constituted a completed transaction as between plaintiff and defendant, and the poles became the property of the defendant at the point of shipment.

In the case of State vs. Shields, 110 La. 547, 34 South. 673, the testimony showed that Shields took orders for the sale of whisky in Winn parish where the sale of intoxicating liquors was prohibited. The orders were to be filled by Webb, a liquor dealer in Ouachita parish, where the sale of liquors was permitted. The orders when taken by Shields in Winn parish were forwarded to Webb at Monroe to be filled and the liquor shipped out. Shields was indicted and convicted in Winn parish for selling intoxicating liquor and the question was presented, whether the sale was made and completed in Winn parish or in Ouachita parish.

The court held that the taking of an order and forwarding it to Webb at Monroe was purely an executory contract, but that it ripened into a sale, a completed contract, when the order was accepted by Webb, the goods segregated from his common stock and delivered to a carrier, and that the sale was made in Ouachita parish and not in Winn parish.

In that case the court quoted approvingly from Machem on Sales, section 721, as follows:

"Upon the making of a contract for the sale of a part of a larger mass of goods thereafter to be supplied, no particular goods, however, being designated, it is clear that no present title does or can pass thereby. The contract at this point is purely executory, and it cannot be effectual to transfer title until it has become attached to some specific goods upon which it can operate. What is essential now is

the appropriation of the goods to the contract."

And further from the same authority, section 725:

"Where, from the terms of the executory agreement to sell unspecified goods, the vendor is to dispatch the goods, or do anything to them that cannot be done until the goods are appropriated, he has the right to choose what the goods shall be, and the property is transferred the moment the dispatch or other act is commenced, for then an appropriation is made, finally and conclusively, by the authority in the agreement."

Counsel cite the above case as supporting their theory, but we think the holding is clearly against them.

As already stated, counsel argue that the transaction in the case at bar was never more than an executory contract.

The poles ordered were at the time the negotiations began at Minneapolis and were part of a common stock which plaintiff owned, just as the liquor for which Shields took orders was part of Webb's common stock at Monroe, Louisiana. The court held, in the Shields case, that the taking of the orders and forwarding them to Webb did not constitute a completed contract and a sale in the parish of Winn, notwithstanding it was contemplated that the liquor should be delivered to the customer in the parish of Winn; but that when Webb received the order, accepted it, segregated the goods from his common stock and delivered the same to a common carrier, the transaction became complete in the parish of Ouachita.

The same is true with reference to the transaction in the case at bar. The taking of the order for the poles was an executory contract of sale, but when the order was accepted by plaintiff and the poles appropriated to the order and delivered to

the common carrier, the contract became a completed sale at the place of shipment.

See: Claflin vs. Mayer, 41 La. Ann. 1048, 7 South. 139.

Succ. of Welsh, 111 La. 801, 35 South. 913.

And other authorities to the same effect.

Counsel say that this case is governed by Article 2458 of the Civil Code which provides that—

"When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted or measured; * * *."

The converse of the proposition, however, necessarily is, that when the goods or other objects are counted, measured and appropriated to the contract the sale is complete, and that is what took place in the case at bar; for the goods were counted, set apart and shipped.

See: 35 Cyc. 291.

As to executory and executed contracts, see 35 Cyc. 274.

As to segregating and setting apart, see 35 Cyc. 315.

But it is contended that this was a sale under a suspensive condition, that it never ripened into a completed sale, for which reason defendant had a right to countermand the order, and in brief counsel say:

"The delivery at Eldorado was the suspensive condition in the executory contract of sale; that the poles not having been delivered it is obvious that the plaintiff could not collect the purchase price."

Mr. Gray testified that the poles were to be delivered to defendant at Eldorado, Arkansas. Without further explanation, we construe that to mean that they were to be shipped to defendant at Eldorado. In other words, Eldorado was designated as the point to which they should be shipped. They had to be shipped to some point. Defendant had no use for them as long as they remained in Kansas City or Minneapolis. The telegram ordering the poles reads, in part:

"Ship Shreveport-Eldorado Pipe Line Company, Eldorado, Arkansas."

An order for goods which merely designates a point to which the goods are to be shipped should not be construed, in the absence of explanation, that the sale would not be complete unless the goods were delivered at that point. If the law were otherwise, no sale of goods on orders would be complete unless the goods were actually received.

While Mr. Gray says the goods were to be delivered at Eldorado, Arkansas, he does not say that it was understood that in order to complete the sale they were to be delivered there. The goods were not purchased subject to inspection and approval. Defendant placed an open order for them and nothing remained for the completion of the sale except the acceptance of the order, the appropriation of the goods thereto, and the delivery to the carrier; all of which was done.

The delivery was made to the Minnesota Transfer Company and finally to the Missouri Pacific Railway Company, the carrier designated by the purchaser. This was a delivery to the purchaser.

35 Cyc. 316.

If the agreement is to sell goods f.o.b. a designated place, such place will ordinarily be regarded as the place of delivery.

35 Cyc. 174.

But there was no agreement in this case to ship the goods f.o.b. Eldorado, Arkansas.

That place was only designated as the point to which the goods were to be shipped. The fact that the freight charges were to be paid by the purchaser and deducted from the bill did not make it an f.o.b. Eldorado, Arkansas, shipment.

See Kessler & Co. vs. Manheim, 114 La. 623, 38 South. 473; Alling vs. Bach, 2 La. Ann. 746.

Defendant did not attempt to cancel the order until after the sale was completed. At the completion of the sale defendant became bound for the price. It is not contended that the poles did not reach Eldorado. They reached that point in January, but were not accepted.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff, Page & Hill Company, do have and recover judgment against defendant, Shreveport-Eldorado Pipe Line Company for the full sum and amount of nine hundred and twelve dollars with legal interest thereon from judicial demand and all costs.