In re EVANGELINE REFINING COMPANY, INC., Debtor.

GAYLE OIL COMPANY, INC., Plaintiff,

v.

EVANGELINE REFINING COMPANY, INC., and Continental Illinois National Bank and Trust Company of Chicago, Defendants.

Bankruptcy No. 483–00016–LC.
Adv. No. 483–0050.

United States Bankruptcy Court, W.D. Louisiana.

Feb. 15, 1984.

David Hurlburt, and Gordon T. Whitman, Lafayette, La., for plaintiff, Gayle Oil Co., Inc.

Philip K. Jones, Jr. and Edward J. Gay, III, Liskow & Lewis, New Orleans, La., for defendant, Continental Illinois Nat. Bank and Trust of Chicago.

Charles N. Wooten, Sr., Lafayette, La., trustee for debtor, pro se.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

Presently before the court are two cross motions for summary judgment. One has been filed by the defendant and the other has been filed by the plaintiff. There are no genuine issues of material fact and the court is of the opinion that one of the movants is clearly entitled to judgment as a matter of law.

### Factual Background

On December 10, 1982, Gayle Oil Company, Inc. (Gayle) entered into a purchase/sale agreement with Fields Energy Resources, Inc. (Fields) for the purchase of 5,000 barrels of diesel fuel (210,000 gallons) at a price of 88.5 cents/net gallon. Pursuant to the agreement, Fields purchased a barge load of approximately 10,000 barrels of diesel fuel from Beaumont Oil, Inc. This fuel was transported from Texas to Evangeline's yard in Jennings, Louisiana, by barge. Evangeline, the debtor is a wholly owned subsidiary of Fields.[1]

Evangeline unloaded the approximately 10,000 barrels (420,000 gallons) of diesel fuel which arrived by barge on December 13, 1982, into its storage tank # 103. The said diesel fuel was co-mingled with a lesser number of barrels of the debtor's diesel fuel that were already contained in the tank. After unloading the barge, the said tank # 103 contained approximately 11,484 barrels (482,328 gallons) of diesel fuel.

The purchase/sale agreement between Fields and Gayle provided that the diesel fuel would be delivered according to the following terms:

"F.O.B.: Evangeline Refining Company, Jennings, Louisiana."

It additionally provided:

"Delivery: Into Buyer's trucks F.O.B.— Evangeline Refining Company."

---

1. Solely for purposes of its Motion for Summary Judgment, the defendants assume that Evangeline and Fields Energy are separate entities and that Evangeline was not the true obligor of Gayle Oil. The court does not reach the issue of whether Evangeline and Fields Energy are separate entities or not. The defendants have conceded that these facts are not material for purposes of the Motion for Summary Judgment.

Upon arrival of the diesel fuel, T.J. Fontenot, President of Gayle, was called and notified of the arrival. He sent a truck to the Evangeline yard to withdraw a sample of the fuel for examination. The sample was examined to insure that the diesel fuel satisfied the stated specifications. It is alleged by the plaintiff that the agreement between Fields and Gayle was that Gayle would have an opportunity to examine the fuel prior to purchase. The purchase/sale agreement does not indicate that such an agreement was a term of the contract, but the facts show that an inspection was made on December 13, 1982. Upon inspection and approval, the fuel was accepted by Gayle and pursuant to the instructions of Matt Dinkle, Regional Sales Manager for Fields, a check payable to Evangeline drawn by Gayle in the amount of $185,850.00 was issued. This check was duly deposited in an Evangeline account at the Calcasieu Marine National Bank in Jennings, Louisiana.

Notations were entered on the books and records of Evangeline to note that 5,000 barrels of diesel fuel contained in tank # 103 belonged to Gayle. Beginning on December 13, 1982, Gayle withdrew a number of quantities of the diesel fuel. Five withdrawals were made between December 13 and December 15, 1982, which withdrawals totalled 36,085 gallons. There remained 173,915 gallons of diesel fuel in tank # 103 that were owed to Gayle.

The debtor is indebted to Continental Illinois National Bank and Trust Company of Chicago (Continental) in a sum in excess of $15,000,000.00, which indebtedness is secured by a mortgage on certain property of the debtor by virtue of an Act of Collateral Mortgage and Collateral Chattel Mortgage passed on January 5, 1982, as supplemented and amended on July 23, 1982. Additionally, Continental held a general assignment of accounts receivable from Evangeline. On December 16, 1982, Continental filed a petition for executory process in Jefferson Davis Parish seeking seizure and sale of Evangeline's facility in Jennings, Louisiana. Continental obtained a judgment by executory process on the same day and a writ of seizure and sale issued. Continental took possession, as keeper, of Evangeline's physical assets that were encumbered by Continental's mortgages. At the time of the seizure of the debtor's refinery, 306,275.34 gallons of diesel fuel remained in storage tank # 103. The debtor's records indicated a balance due Gayle of 173,915 gallons of diesel fuel.

On January 6, 1983, Evangeline filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. The debtor was named debtor-in-possession on the 6th day of January, 1983. Pursuant to a turnover order dated January 26, 1983, the seized property, including the diesel fuel, was released to the debtor by Continental.

During the time between Continental's seizure and the filing of the voluntary petition for reorganization, Gayle made attempts to pick up additional truckloads of the diesel fuel owed to it that remained in tank # 103. However, Continental, as keeper of the physical assets, would not allow Gayle to draw on its cache of diesel fuel. Further attempts were made by Gayle to withdraw the balance of the diesel fuel owed to it after the petition for reorganization was filed. However, Gayle was still not permitted to do so since a dispute over its ownership existed.

On March 3, 1983, Gayle filed the present adversary proceeding against both Evangeline and Continental, asserting a claim for damages and seeking reclamation of the diesel fuel that Gayle had not been allowed to pick up from the Evangeline premises. On March 14, 1983, Charles N. Wooten, Sr. was appointed Trustee for Evangeline, the Chapter 11 debtor. The plaintiff, Gayle, on April 4, 1983, filed a motion to substitute Charles N. Wooten in place of the debtor as the proper party defendant in these proceedings. An order to the same effect issued the same day.

By stipulation of counsel, all parties agreed to permit the sale of all diesel fuel on the premises of Evangeline's refinery prior to the resolution of this adversary proceeding in order to prevent the fuel

from declining in price or deteriorating in quality. The stipulation, filed in this court on March 14, 1983, further provided that the sale of the diesel fuel would not prejudice Gayle's right to claim damages and/or the proceeds in the sale of that diesel fuel to which it claimed ownership. The diesel fuel on Evangeline's premises has. been sold and the proceeds therefrom have been deposited in an escrow account as per the stipulation. Gayle also seeks attorney's fees and costs.

The court perceives two issues that must be resolved in order to determine the ownership of the 173,915 gallons of diesel fuel in dispute. They are:

(1) Whether a *contract of sale* was ever completed; and

(2) Whether the diesel fuel was liable to seizure by Continental, a third party, while being stored on Evangeline's premises.

### Conclusions of Law

A. A contract of sale was complete.

Continental and Evangeline claim that a contract of sale was never complete. They assert that Gayle and Fields Energy, at best, only entered into a contract to sell. They claim that ownership of the diesel fuel did not pass until the fuel was actually pumped into Gayle's trucks from tank # 103 on the Evangeline premises. Furthermore, the defendants claim that Evangeline, not Gayle, is the owner of the 173,915 gallons of fuel that Gayle was prohibited from retrieving. Additionally, they seek to have Gayle treated as a general unsecured creditor and for the court to deny Gayle the right to reclaim the fuel or proceeds from the sale of the fuel for which Gayle prepaid in an amount of $185,500.00. To deny Gayle's claim for reclamation would be unconscionable as well as inequitable.

■ Article 2439 of the Louisiana Civil Code identifies three prerequisites to the perfection of a contract of sale: (1) the thing sold, (2) the price, and (3) the consent of the parties. The defendants to this adversary proceeding claim that the first element to a contract of sale is missing, i.e. the thing sold. According to the Louisiana Civil Code, when the thing to be sold is part of a greater like mass and thus uncertain and unidentified, the first prerequisite is not satisfied, and, therefore, the *contract of sale* is not perfected. Instead, the contract is executory, or otherwise called a contract to sell. See, *John M. Parker Company v. E. Martin & Company,* 148 La. 791, 80 So. 68 (1921); *In re: Wallace Lincoln-Mercury Company, Inc.,* 469 F.2d 396, 402 (5th Cir. 1972). Once the thing is identified, segregated from the mass, and designated as the specific thing being sold, then the sale is perfected and ownership passes to the buyer. See, *Succession of Welsh,* 111 La. 801, 35 So. 913 (1904); 2 Litvinoff, *Obligations* §§ 39–52 (1975).

■ The court finds that there has been sufficient identification of the fuel sold to Gayle. Specifically, 5,000 barrels were identified to be sold to Gayle. The 5,000 barrels were shipped via independent carrier with an additional 5,000 barrels, in one barge load, to the Evangeline yard. All fuel was placed in tank # 103, Evangeline's only diesel storage tank. Upon arrival, Gayle inspected and accepted the fuel prior to its remittance of payment. Additionally, the books and records of Evangeline reflected the ownership interest of Gayle in the fuel. Furthermore, a copy of the purchase/sale agreement was forwarded by Fields to Evangeline to further reflect the ownership interest of Gayle. Still further, Evangeline issued a letter dated December 28, 1982, clearly reflecting that Evangeline considered the fuel to belong to Gayle and that it was simply holding and storing the fuel for Gayle. The defendants to this adversary proceeding also overlooked Louisiana Civil Code Art. 2456 which dictates that the sale is perfected "... as soon as there exists an agreement for the object and the price thereof, although the object has not been delivered, nor the price paid." The court is satisfied that all these elements have been fulfilled. Alternatively, and assuming arguendo, that there was not sufficient identification of the 5,000 barrels of

diesel fuel as discussed above, the court finds that the facts of this case call for a departure from the principles of the Louisiana Civil Code. As Professor Litvinoff has explained:

"It should be remembered here that, from time immemorial, the special needs of commerce have demanded special rules. For this reason, the distinction between rules that govern matters that are civil, in a proper sense, and rules that govern matters that are commercial, is almost as old as the civilian tradition." 2 Litvinoff, *Obligations,* § 150 p. 276.

■ In this light, we find no obstacle to departing from the principles of the Civil Code, designed undoubtedly, for matters of a different order and applying principles of commercial law, due to the specifically commercial nature of the transaction at issue. This is a case where the special needs of commerce demand special rules.

■ The purchase/sale agreement entered into by Gayle and Fields is ambiguous as regards the terms of delivery. Ambiguous terms are to be construed against the seller especially when, as here, the seller has prepared the purchase agreement. La.C.C. Art. 2747.

On the one hand, the contract provides:
"F.O.B.: EVANGELINE REFINING COMPANY—Jennings, Louisiana."

On the other hand, it provides a contradictory provision, to wit:
"Delivery: Into buyer's trucks F.O.B.— Evangeline Refining Company."

Due to the specifically commercial nature of this transaction and construing the contradictory provisions against the seller, we must conclude that the former provision controls; i.e. "F.O.B.: EVANGELINE REFINING COMPANY—Jennings, Louisiana."

■ When a vendor contracts to sell goods F.O.B. destination, the ownership transfers to the buyer when the goods reach their point of destination. *Greeson Company v. Harnischfeger Corporation,* 231 La. 934, 93 So.2d 221 (1957).

Professor Litvinoff, in his treatise, sheds additional light on this subject. He writes:
"In general terms, if it appears that the vendor has agreed to transport the thing sold *to another place for delivery to the vendee,* ownership—and consequently risk—will not be transferred under the Louisiana jurisprudence, until the vendor does so." (emphasis added) 2 Litvinoff, *Obligations,* § 150, p. 276.

Under the terms of the purchase/sale agreement entered into between Fields and Gayle, Fields, as vendor, agreed to transport the fuel to another place (i.e. Evangeline Refinery) for delivery to Gayle, the vendee. Consequently, ownership passed when Fields accomplished its obligation to transport the fuel to the Evangeline site at Jennings, Louisiana. The diesel fuel arrived "free on board" at the Evangeline Refinery facilities in Jennings on December 13, 1982. The seller fulfilled its contractual obligations at that time, and ownership of the 5,000 barrels of diesel allocated to Gayle Oil Company passed to Gayle that very moment.

We conclude that Gayle is the rightful owner of the diesel fuel in question.

B. Delivery had occurred to affect third parties.

Article 1922 of the Louisiana Civil Code provides in pertinent part that as to movables, "the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object." Consistent with this principle, Article 1923 further provides that "if movable property has been alienated by contract, but not delivered, it is liable in the hands of the obligor to seizure and attachment, in behalf of his creditors." Finally, Article 1924 provides that "what shall be considered a delivery of possession is determined by the rule of law, applicable to the situation and nature of the property."

■ In this case, delivery of the diesel fuel by the very terms of the Purchase Agreement did occur when the shipment by

barge via independent carrier, reached its destination "free on board" at the Evangeline Refinery in Jennings, Louisiana. Thus, it is self-evident that delivery of the "movable" had occurred prior to the time of the seizure by Continental. Furthermore, the fuel was not in the hands of the obligor (Fields) at the time of seizure, but was in the hands of a third party (Evangeline). According to the principle of La.C.C. Art. 1923, the movable is liable to seizure only while it remains in the hands of the obligor. Clearly, Evangeline was not Gayle's obligor.

Still further, we must look to the rule of law applicable to the situation and nature of the property to determine whether delivery of possession had been completed. As previously discussed, this was a sophisticated commercial transaction involving thousands of barrels of oil product and hundreds of thousand dollars. According to the law of commercial transactions, where an independent carrier transports goods at the direction of the seller and the contract provides that delivery is to be F.O.B. destination, delivery of possession occurs at the moment the goods reach their destination. See, *Greeson Company v. Harnischfeger Corporation, supra.*

The facts support the conclusion that delivery had been completed and that the diesel fuel was no longer in the hands of the obligor (Fields). Instead it was being stored at the facilities of a third party (Evangeline). The reason for this arrangement was due to the fact that Gayle was physically unable to store 5,000 barrels of fuel at its own storage facilities. It lacked storage tanks of that size.

Based on the above discussion, it seems clear to us that Continental improperly seized the property of Gayle being stored at Evangeline's refinery.

In summary, the court concludes that a contract of sale existed and was perfected between Gayle (vendee) and Fields (vendor). This sale was consummated prior to Continental's seizure of all the debtor's physical assets including its inventory. Gayle Oil Company is hereby declared the rightful owner of the 173,915 gallons of diesel fuel in dispute here. Additionally, delivery to the purchaser, Gayle, had been completed prior to the seizure by Continental. Therefore, the diesel fuel was no longer legally subject to seizure by Continental while being stored on the debtor's premises.

Gayle Oil Company is granted summary judgment in its favor and against Evangeline Refining Company, Inc. and Continental Illinois National Bank and Trust of Chicago, for all proceeds secured from the sale of its diesel fuel. Costs of these proceedings, if any, are to be shared equally by the debtor's estate and Continental.

■ Gayle has prayed for damages and attorney's fees in addition to reclamation and costs. Gayle has failed to prove any damages and we must, therefore, deny damages. However, this being a court of equity, the plaintiff will be awarded interest at the rate of 12% from the date of judicial demand.

■ Addressing the issue of attorney's fees, we note that there is no provision in the Bankruptcy Code or Rules which expressly authorizes an award of attorney's fees on the facts of the present case. In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the "American rule" in equity cases that, in the absence of a finding of bad faith or willful misconduct, attorney's fees are generally not awardable as costs. There being no showing of bad faith, willful misconduct, vexatious actions, or contempt under the facts of this case, attorney's fees are not awardable.