WALTER J. ROTHSCHILD, Judge.
| ¡¡The defendant, Craig Burkett, appeals the juvenile court’s December 29, 2005 judgment, granting a Motion to Modify Child Support filed by the State of Louisiana, Department of Social Services (“the State”). For the reasons which follow, we affirm.
Mr. Burkett and the recipient, Shelly Burkett, were divorced in 2001 in a proceeding in the 24th Judicial District Court. They are the parents of two minor sons. In July 2001, the child support matter initiated in the 24th Judicial District Court was transferred to the Juvenile Court for the Parish of Jefferson, in accordance with LSA-R.S. 46:236.2. On August 8, 2001, the State filed a Motion to Modify Support, asking the court to increase Mr. Burkett’s child support obligation. On September 26, 2001, the juvenile court granted the State’s motion and set Mr. Burkett’s child support obligation at $569.46 per month plus court costs.
|3On December 18, 2001, the defendant filed a Rule to Reduce Child Support, which was subsequently denied. On January 30, 2002, the State filed a Rule to Increase Child Support, asserting that there was a change in circumstances because Mr. Burkett had an increase in income and the children were not covered by medical insurance. After a hearing on May 6, 2002, the State’s Rule to Increase Child Support was granted, and Mr. Burk-ett was ordered to pay $706 per month plus court costs. The juvenile court further ordered that Mr. Burkett was not entitled to claim the children for the 2001 tax deduction because he was in arrears in 2001. Mr. Burkett filed an appeal with this Court, contesting the increase in child support and the denial of his request to claim the 2001 tax deduction for the children.
Oh April 29, 2003, a panel of this Court issued an opinion affirming the juvenile court’s decision to deny Mr. Burkett’s request to claim the 2001 tax deduction, but reversing the increase in child support. This Court found that an increase in child support was not permissible at that time, because there had not been a material change in circumstances under LSA-R.S. O^lRCXl).[1] Therefore, the judgment increasing Mr. Burkett’s child support obligation to $706.00 per month was reversed. Accordingly, the previous child support award of $569.46 per month was reinstated and, because the defendant had been paying $706.00, he was entitled to reimbursement for the overpayment. At a hearing on June 9, 2003, the court ordered the defendant to pay only $300.00 per month plus court costs until the credit for overpayment was exhausted.
|4On December 8, 2004, the State filed a Motion to Modify Child Support.[2] On *674 April 11, 2005, the defendant filed an opposition to the State’s motion, arguing that it was improper because three years had not passed since support was last set and the State “cannot apply for a Judicial review until after the passage of three years.” The parties appeared before the hearing officer on July 28, 2005, but the matter was continued to allow the recipient to appear with further proof of day care expenses.
On August 4, 2005, the parties appeared again before the hearing officer. The hearing officer recommended that Mr. Burkett’s child support obligation be increased to $888.33 per month plus court costs, retroactive from December 8, 2004 to May 27, 2005, and that his child support obligation be increased to $713.68 per month plus court costs, retroactive from May 28, 2005 to the present. He further found that the defendant’s Motion for Contempt[3] filed against the recipient was moot. The defendant disagreed with the recommendations of the hearing officer and requested a hearing before the juvenile court judge. On that same day, August 4, 2005, the judge heard the matter and allowed the parties additional time to submit memoranda.
On December 29, 2005, the juvenile court rendered a “Judgment with Incorporated Reasons,” finding that: 1) more than three years had elapsed between the time of the previous award and the filing of the State’s Motion to Modify Support on December 8, 2004; 2) the defendant’s Motion for Contempt was untimely; and 3) the costs of after school care were fair and reasonable and must be included in the child support obligation. The juvenile court granted the State’s Motion to Modify and adopted the recommendations of the hearing officer as an |sorder of the Court. Accordingly, child support was set at $888.33 per month plus court costs, retroactive from December 8, 2004 to May 27, 2005, and it was set at $713.68 per month plus court costs, retroactive from May 28, 2005 to the present. It is from this judgment that the defendant, Mr. Burkett, appeals.

DISCUSSION

In his first argument on appeal, Mr. Burkett asserts that the juvenile court erred in granting the State’s Motion to Modify Support by finding that more than three years had passed since the last time support was set. Mr. Burkett contends that the last judgment from which the three year period should be calculated was the June 9, 2003 judgment, so three years had not elapsed between the time of that judgment and the filing of the State’s Motion to Modify Child Support on December 8, 2004. The State responds that the three-year period should be calculated from the September 26, 2001 judgment setting Mr. Burkett’s child support obligation at $569.46, because that judgment was a considered decree based on the income of the parents, and any change in the amount of the September 26, 2001 judgment was interim in nature and did not alter the basic child support obligation.
LSA-R.S. 9:311 provides in pertinent part:
(C) For purposes of this Section, in eases where the Department of Social Services is providing support enforcement services:
2) Upon request of either party or on its own initiative and if the best interest of the child so requires, the department shall provide for judicial review and, if appropriate, the court *675 may adjust the amount of the existing child support award every three years if the existing award differs from the amount which would otherwise be awarded under the application of the child support guidelines. The review provided hereby does not require a showing of a material change in circumstance nor preclude a party from seeking a reduction or increase under the other provisions of this Section. (Emphasis added.)
IfiThe First Circuit addressed a similar issue in Deshotels v. Deshotels, 93-2026 (La.App. 1 Cir. 6/24/94), 638 So.2d 1199, 1201, and found that “previous award,” as used in LSA-R.S. 9:311 for a change in circumstances inquiry, is the time that the last award was set, rather than the last time a Motion to Modify Support was considered, even if it was denied. See also, Starks v. Starks, 28,237 (La.App. 2 Cir. 4/3/96), 671 So.2d 1224.
In the present case, Mr. Burkett’s child support obligation was set at $569.46 on September 26, 2001, based on the parents’ income and the statutory guidelines. This award was in effect over three years later on December 8, 2004 when the State filed its Motion to Modify Support. Although the child support award had been increased on May 6, 2002, this modification was vacated by this Court’s April 29, 2003 opinion. In that opinion, this Court did not use the parties’ income and statutory guidelines to alter the child support obligation. Rather, it simply vacated the increase in the award, and the child support award set forth on September 26, 2001 was reinstated. Mr. Burkett received the benefit of the reinstatement of the September 26, 2001 judgment when he received a credit for the amounts he paid in excess of the amount ordered in that judgment. Accordingly, we are unpersuaded by his argument that the September 26, 2001 award was not the last award of support.[4]
Considering the evidence in the record before us, we find that the juvenile court was correct in finding that more than three years had elapsed from the time of the previous award, September 26, 2001, to the date the State’s Motion to Modify 17Support was filed, December 8, 2004. Accordingly, the defendant’s argument on this issue is without merit.
In the second issue on appeal, Mr. Burkett contends that the trial court erred in including child care expenses when determining his child support obligation. First, Mr. Burkett asserts that the juvenile court did not have jurisdiction over this issue because decisions regarding child care are subject to the jurisdiction of the 24th Judicial District Court. We find no merit in this argument. This matter was properly transferred to the juvenile court for child support enforcement in accordance with LSA-R.S. 46:236.2. In accordance with its authority to modify and enforce child support, the juvenile court has jurisdiction to award child care expenses. Accordingly, we find that the juvenile court properly considered the issue *676 of child care expenses and did not exceed its jurisdiction.
Mr. Burkett sets forth numerous other arguments, asserting that child care expenses should not have been included in the child support calculations. We have reviewed and considered defendant’s arguments and we find each one of them to be without merit.
LSA-R.S. 9:315.3 provides in part that “Net child care costs shall be added to the basic child support obligation.” LSA-R.S. 9:315(0(6) defines “net child care costs” as “the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care.” A trial court’s order of child support is entitled to great weight. Carmouche v. Carmouche, 03-1106 (La.App. 5 Cir. 2/23/04), 869 So.2d 224, 226. Generally, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. State, Department of Social Services ex rel. D.F. v. L.T., 05-1965 (La.7/6/06), 934 So.2d 687.
Is At the hearing on this matter, the State sought modification of child support for different periods of time: 1) from December 8, 2004, the date the State filed its Motion to Modify, until May 27, 2005 when the parties’ youngest child graduated from the nursery/day care program; and 2) from May 28, 2005 until the present.
At the hearing on this matter, Ms. Burkett testified that she is a teacher in Pearl River. She stated that, in order to get to work on time, she has to leave her home in Mandeville at 6:30 a.m., and she has a lady come to her home to watch the children before school because nearby daycare centers do not open until 7:00 a.m. Mr. Burkett complains about the before school care expenses on appeal. However, in its reasons for judgment, the juvenile court indicated that it would only consider after school care expenses because Mr. Burkett withdrew his objection to before school care expenses at the hearing.
At the hearing on August 4, 2005, Mr. Burkett stated:
I don’t have issues that the fact that she leaves [sic] before school care, but I do have issues is with is [sic] if she goes to work for seven o’clock in the morning, your [sic] right, my kids don’t go until nine.
Thereafter, the following exchange occurred:
THE COURT: ... so we’re not quibbling about anything other than the fact that you want them to go to the YMCA rather than have the lady at the house.
CRAIG BURKETT:
No I think that they should, no because she’s using the lady at the house plus after school care, Your Honor. And I don’t think she needs after school care, she’s adding them both ...
THE COURT:
... okay, so the lady at the house is okay with, it’s the after school care that, I’m trying to narrow the issue, sir.
CRAIG BURKETT:
Yes, Your Honor ...
|gTHE COURT:
... it’s the after school care you’re worried about ...
CRAIG BURKETT:
... it’s the after school care that’s, that’s the issue here....
Considering Mr. Burkett’s testimony at the hearing, we agree with the juvenile court that Mr. Burkett waived his objection to the before school care expenses. Accordingly, the only child care expenses *677 we will address are the after school care expenses.
With regard to the after school care expenses, Ms. Burkett testified that she finishes school at 2:30 p.m., but she often has to stay after school for meetings. She stated that there is a gap between the time the school bus brings the children home and the time that she gets home. Therefore, the children stay at their school for after school care until she picks them up. Mr. Burkett argued that the after school meetings and organizational activities attended by Ms. Burkett are not required for her employment, and he should not have to pay child care expenses due to her “volunteer work.” Ms. Burkett responded that she is mandated to attend IEP (individual educational plans) meetings, faculty meetings, and other meetings, and there is an average of three meetings per week.
Ms. Burkett testified that she looked into putting the children in after school care on only certain days, but the after school care program in kindergarten, which the youngest child attends, requires everyday participation in order for consistency in the children’s schedules. Mr. Burkett proposed that the children go to the YMCA after school because it is less expensive than the after school care program at the children’s school. However, Ms. Burkett stated that she does not think it is psychologically good for the children to have a nanny in the morning, then go to hnschool, then go to the YMCA, and to have even additional child care providers on the south shore when they are with their father.
After the parties submitted post-hearing memoranda, the juvenile court rendered a judgment with reasons on December 29, 2005. In its reasons, the juvenile court found that Ms. Burkett’s need for after school care for the children was not due to “volunteer work,” because the meetings she attends after school are part of the course and scope of her job duties as a teacher. The court also found “the expenses for aftercare fair and reasonable, and law mandates their inclusion in the child support obligation.” We see no error in these findings.
Defendant further argues that the juvenile court erred when calculating support by not allowing a credit for the time the children spend with him and for the expense of transporting them to and from St. Tammany. He also argues that the juvenile court should have deviated from the child support guidelines, because the amount of support ordered is inequitable to the parties.
The party seeking a reduction in child support based on the amount of time spent with the children bears the burden of proving: 1) that he exercises shared custody or extraordinary visitation with the children, 2) that the extra time spent with the non-domiciliary parent results in a greater financial burden on that parent and a lesser financial burden on the domiciliary parent, and 3) that application of the guidelines would not be in the best interest of the children or would be inequitable to the parties. LSA-R.S. 9:315.8(E)(3); Guillot v. Munn, 99-2132 (La.3/24/00), 756 So.2d 290, 300.
Our review of the record reveals that Mr. Burkett did not meet his burden of establishing that he is entitled to the credits he seeks. We further see no abuse of the juvenile court’s discretion in declining to deviate from the child support guidelines.
hi After considering all of the defendant’s arguments on this issue, along with the record before us and the applicable law, we find that the evidence submitted in this case is sufficient to support the trial judge’s findings. Accordingly, we find no *678 abuse of the trial court’s discretion or manifest error in the modification of child support or the amount of child care expenses awarded. Thus, this judgment of the juvenile court is affirmed.
In the final issue on appeal, Mr. Burkett argues that the juvenile court erred in not finding Ms. Burkett in contempt of court for asserting at hearings in 2002 that she was an unemployed student when she was actually employed. As stated previously, the Motion for Contempt referred to by the defendant is not contained in the appellate record. We further note that there was discussion at the August 4, 2005 hearing indicating that this motion was not contained in the juvenile court record. Because the record contains no evidence to establish that this motion was properly filed with the Clerk of Court and set for hearing and because this motion is not before us to review, we decline to address this issue on appeal.

DECREE

For the reasons set forth above, we affirm the December 29, 2005 judgment of the juvenile court.

AFFIRMED.

. In order for there to be a material change of circumstances under LSA-R.S. 9:311(C)(1), after a strict application of the child support guidelines, there must be at least a 25% change in the existing child support award. In this case, in order to constitute a material change, the increase would have to have resulted in an award of $711.82. However, the increase only amounted to $706.00.

. This motion is not contained in the appellate record. However, the record provides *674 sufficient information to establish that this motion was filed on this date.

. The defendant's Motion for Contempt is not contained in the appellate record.

. The defendant also argues that child support was last set at $300 per month on June 9, 2003, because the minute entry-judgment from this date originally indicated, "support set at $300 + 5% CC per month, effective 06/01/2002.” He asserts that the June 9, 2003 minute entry should not have been amended on April 4, 2005 to state:
Ongoing Support Set at $569.42. Defendant has overpaid and is given credit for $1105.06. In order for the recipient to receive payment, defendant will pay $300.00 + CC per month for a total of $315.00 until arrears are zeroed out and then the support will return to $569.42 per month.”
However, we see no error in this amendment because it accurately reflects what occurred at the June 9, 2003 hearing and was consistent with this Court’s opinion.