886 So.2d 556 (2004)
VOLVO TRUCKS NORTH AMERICA, INC.
v.
The STATE of Louisiana through the LOUISIANA MOTOR VEHICLE COMMISSION.,
Crescent Ford Truck Sales, Inc.
v.
Volvo Trucks North America, Inc. and Louisiana Motor Vehicle Commission.
Nos. 04-CA-302, 04-CA-303.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 2004.
Rehearing Denied December 2, 2004.
*557 Leonard L. Levenson, Colleen Boyle Gannon, New Orleans, LA, for Plaintiff/Appellee-2nd Appellant.
Sidney L. Shushan, C. Theodore Alpaugh, III, Jonathan M. Shushan, Guste, Barnett & Shushan, New Orleans, LA, for Plaintiff/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
The instant proceeding started when Crescent filed a Verified Emergency Petition for an Interlocutory and Permanent Cease and Desist Order against Volvo, to Enjoin Termination of Dealer Sales and Service Agreement with the Louisiana Motor Vehicle Commission, (LMVC). After the parties submitted a joint stipulation of facts, Crescent's petition was heard before a three member panel of the LMVC. The LMVC granted relief in favor of Crescent.
Thereafter, Volvo filed a petition for judicial review of Administrative Decision, naming the LVMC as defendant. Crescent also filed a petition for Partial Judicial review of the Administrative decision, naming both LMVC and Volvo as defendants. *558 Crescent also filed a petition for intervention in the suit initiated by Volvo. The cases were consolidated for consideration.
On November 19, 2003, the trial court rendered judgment affirming the decision of the LMVC. Both parties have appealed from that decision.

FACTS
The pertinent facts are not in dispute, and were the subject of a joint stipulation entered into by the parties prior to the administrative hearing. Basically, the facts established that in November of 1996, Volvo sold to Crescent, and Crescent leased to Luciano, a fleet of fifty Volvo trucks. The purchase agreement was prepared by Crescent, approved by Volvo and signed by Luciano, before the trucks were built. At the time of the lease, Glenn Koch of Crescent signed Louis Saia's name to the warranty registration. Glenn Koch stated that Saia gave him permission to sign the warranty; however, Saia denies that he gave permission. In November of 1999, Luciano sued Volvo in federal court. Crescent was not named in the suit. In the suit, Luciano claimed damages for unpaid repairs, breach of contract, oral warranty, and fraud. The suit was settled in February of 2002. Crescent did not contribute anything to the settlement.
Volvo and Crescent entered into a series of Dealer Sales and Service Agreements/Contracts with Volvo Trucks, dated January 1, 1992, April 1, 1995, and June 20, 2000. The 1995 contract was in effect at the time of the Luciano purchase. The contract provided in part that "Under no circumstances should anyone other than the customer sign the warranty registration." The contract further provided that
Section 5.04 Termination by the Company for Cause"
(a) General. The Company may terminate this Agreement on reasonable advance notice upon the occurrence of any of the following:
(vii) A misrepresentation by the Dealer of a material fact in connection with ... any financial statement or other document submitted by the Dealer under this Agreement ..."
(xvi) Failure of the Dealer to perform any material obligation under this Agreement.
(xvii) A significant act or omission of the Dealer which is damaging to the Company or the network of dealers.
(b) Non-Performance.
... In the event the Dealer fails to perform any material duty or obligation imposed upon it by this Agreement, the Company may (i) terminate this Agreement upon reasonable notice...
The Dealership agreement was again renewed in 2000.[1]
In rendering judgment, the LMVC made findings of fact that Crescent Ford Truck Sales, Inc. and Volvo Trucks North America, Inc. entered into a Dealer Sales and Service Agreement effective April 1, *559 1995; that the Agreement provided that "In connection with the sale or lease of Products, Dealer shall execute and require its Customer to execute such warranty documents as the Company shall require, in accordance with its policies as announced from time to time;" that the Warranty Administration Procedures Manual of Volvo Trucks North America, Inc. provided that no one other than the customer was to sign the warranty registration; and that Glen Koch of Crescent Ford Truck Sales, Inc. signed the name of Louis Saia, III of Luciano Refrigerated Transport, Inc. to the Warranty Registration of Volvo GM Heavy Truck on January 7, 1997.
The Commission then found as a matter of law that the signing of Louis Saia III's name to the Volvo Heavy Truck Warranty Registration by Mr. Glen Koch was a violation of the Dealer Sales and Service Agreement and that this action, on this one occasion, was not just cause for termination of the Dealer Sales and Service Agreement by and between Crescent Ford Truck Sales, Inc. and Volvo Trucks North America, Inc.
The trial court, in affirming the decision of the LMVC, stated that
Defendant's [sic] argue that Volvo should be allowed to terminate its dealership contract with Crescent Ford because of the signing of a warranty registration card by a manager rather than the customer. This act was stipulated to and shall be maintained. While this act was a violation of the terms of the Dealership Agreement between Crescent and Volvo, it does not constitute a material breach of the contract.
The findings of the Motor Vehicle Commission shall remain in place and shall not be overturned by this court. Because the Commission has not terminated any dealerships without a showing of fraud or gross misconduct does not mean that new rules have been promulgated without notice or proper authority. It simply means that the cases before the Motor Vehicle Commission where the dealership's [sic] were terminated to date have involved dealer's pocketing money, stealing money by false warranty claims, or intentional acts to harm the manufacturer.
Both Volvo and Crescent filed for appeal from that decision.
In this appeal, Volvo alleges that the signing by Crescent of Saia's name to the warranty registration without authority is a clear violation of the Dealership agreement, and that this violation justified termination of the agreement as a matter of law and public policy. It further alleges that the LMVC exceeded its statutory authority when it invalidated Volvo's termination of the dealership agreement. Next it argues that the "unpublished policy" of the LMVC (to not approve of any termination of a franchise agreement in the absence of fraud) is illegal rule making prohibited by the Administrative Procedures Act, and thus is unenforceable and in violation of Volvo's right to due process of law. Next, Volvo argues that R.S. 32:1254(N)(6)(c) in unconstitutionally vague and violates due process. Finally, Volvo also argues that the unpublished policy, which is in violation of the Administrative procedures Act, is a violation of the Contract Clauses of the Constitutions of the United States of America and of the State of Louisiana.
Crescent alleges the LMVC's finding that Crescent violated its dealership agreement with Volvo when Glen Koch signed the name of Saia to the Warranty Certificate was an error of law and not supportable or sustainable by a preponderance of the evidence submitted to the LMVC.

*560 ANALYSIS

We review the district court's appellate review of a decision of a state agency, the LMVC, under La. R.S. 49:964. Under La. R.S. 49:964(G) the trial court's review of the LMVC's decisions is defined as follows:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of this rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
In our review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of a court of appeal. Giles Automotive, Inc. v. Louisiana Motor Vehicle Com'n, 03-0299 (La.App. 5 Cir. 7/29/03), 852 So.2d 1091.
The Louisiana Motor Vehicle Commission had the authority to enjoin a revocation of franchise agreement, as provided in La. R.S. 32:1254(N)(6)(c), which states:
It shall be a violation of this Chapter:
(6) For a manufacturer of motor vehicles, a distributor, a wholesaler, distributor branch or factory branch, or officer, agent, or other representative thereof:
(c) To unfairly, without just cause and due regard to the equities of said dealer, cancel the franchise of any motor vehicle dealer[.]
We are called upon to review the findings by both the LMVC and the district court that the one action of then salesman Koch, in signing the warranty card on behalf of Saia, regardless of whether he was authorized, was not just cause for the termination of the franchise agreement.
In its first allegations of error, Volvo argues that the signing of Saia's name to the warranty registration without authority to do so and without ratification by Saia is a clear violation of the dealership agreement. It further argues that this violation justifies termination of the agreement as a matter of law and policy.
Initially, we note that the stipulation of facts underlying this suit provides that Koch signed Saia's name to the warranty card. It does not state that this was done without authority or ratification, as this fact was disputed by the parties.
In this case, the Commissioners found that, although there was a violation of the agreement between Volvo and Crescent, the one action was not sufficient to constitute just cause, and that the one action was not such that termination of the franchise was warranted. We agree.
Volvo argues that had Koch not signed the warranty card, there would not have been a suit and it would not have suffered damages. However, these assertions go outside of the stipulation of facts as presented *561 to both the LMVC and the district court.
We therefore conclude that the findings of the LMVC were not in excess of the statutory authority given to it, were not arbitrary and capricious or characterized by abuse of discretion, or were manifestly erroneous in view of the evidence on the whole record (which in this case was provided by stipulation).
Volvo next argues that LMVC's decision was based on an "unwritten rule" that no terminations would be upheld unless they were either due to dealer fraud or financial default. It argues that this "unwritten rule" is in violation of the Louisiana Administrative Procedures Act and the Federal Administrative Procedures Act, and therefore cannot be enforced. Further, enforcement of this rule is in violation of Volvo's right to due process under the Administrative Procedures Act. Finally, Volvo argues that this unwritten rule, which limits "acceptable" terminations to just the areas of financial misconduct and fraud violates the Contract Clauses of both the United States and Louisiana Constitutions.
Volvo's argument that the LMVC created an unwritten rule was based on the comments of one of the commissioners during the hearing of this matter, wherein he stated that the only termination that he remembered being upheld was one that involved fraud and/or theft. Our review of the transcript of that hearing does not support a conclusion, based on those statements, that the LMVC had an "unwritten rule" regarding franchise terminations. Rather, the findings as stated by the Commission reflected that the termination was not upheld for lack of "just cause" and not because there was no fraud or financial default.
Volvo also challenges the constitutionality of the Motor Vehicle laws, alleging that La. R.S. 32:1254(N)(6)(c) is unconstitutional and violates due process. It asserts that the Legislature has not defined the terms "unfair" and "equities of the dealer" in the Code, that these terms are unconstitutionally vague, and that enforcement of these provisions against Volvo is impermissible and unconstitutional under the Fourteenth Amendment to the Constitution. "The longstanding jurisprudential rule of law in Louisiana is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specially pleaded and the grounds for the claim particularized." Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864. The issue of the constitutionality of the Motor Vehicle Laws was not litigated in the district court, and cannot be addressed for the first time in this appeal.
Crescent also appealed, seeking reversal of the conclusion of law by both the LMVC and the district court that Koch's action was a breach of the dealership agreement. Again we find that this determination was not arbitrary or capricious, nor was it manifestly erroneous.
For the above discussed reasons, the decision of the trial court, upholding the rulings of the Louisiana Motor Vehicle Commission, is affirmed. Costs are divided between the parties.
AFFIRMED.
ROTHSCHILD, J., concurs in part and dissents in part.
ROTHSCHILD, J., concurring in part and dissenting in part.
I concur with the majority's decision to affirm the conclusion of the LMVC and the trial court that Koch's signing of Saia's *562 name to the Warranty Certificate was in fact a violation of the dealership agreement. However, I respectfully disagree with the majority's finding that this violation did not constitute just cause to terminate the dealership agreement between Volvo and Crescent.
The 1995 dealership agreement specifically provides that "[u]nder no circumstances should anyone other than the customer sign the warranty registration." There is a dispute as to whether or not Saia gave Koch permission to sign the warranty registration. However, regardless of whether or not permission was given, the signing of Saia's name to warranty registration was a breach of this mandatory term of the agreement.
Both the 1995 and 2000 dealership agreements provide that Volvo may terminate the agreement upon the occurrence of "a significant act or omission of the Dealer which is damaging to the Company or the network of dealers." I believe that Koch's signing of Saia's name to the warranty registration was a significant act that damaged the company, because the federal litigation between Luciano and Volvo arose from a dispute over the warranty and this could have been avoided if Saia had signed the warranty documents himself.
Under LSA-R.S. 32:1256 G.(1), the LMVC is authorized to order the renewal or reinstatement of any franchise of a motor vehicle dealer if it has been "unfairly cancelled or not renewed due to lack of just provocation or cause." However, considering Koch's violation of the dealership agreement, I do not believe that the franchise was unfairly cancelled.
Accordingly, I would reverse the decision of the LMVC and the trial court and reinstate Volvo's termination of the franchise, because I believe that Koch's breach of the dealership agreement was in fact material and grounds for termination under the terms of the dealership agreement.
NOTES
[1] The third agreement, executed in 2000, provides that

Section 8.4 Termination by the Company for Cause 8.4.1 Reasons for termination the company may terminate this Agreement on reasonable advance notice for any of the following reasons:
8. Misrepresentation
Misrepresentation by the Dealer of a material fact in connection with:
... any financial statement of other document the Dealer submits under this Agreement ...
17. Failure to Perform Material Obligation
Dealer's failure to perform any material obligation under this Agreement.
18. Damaging Act of Omission
A significant act or omission by the Dealer which is damaging to the Company or the network of dealers.