956 So.2d 15 (2007)
Mary Dancy BREWTON
v.
STATE of Louisiana DEPARTMENT OF HEALTH AND HOSPITALS.
No. 06-CA-804.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2007.
*16 Neal R. Elliott, Jr., Attorney at Law, Louisiana Department of Health and Hospitals, Baton Rouge, Louisiana, for Defendant/Appellant.
Roy C. Cheatwood, Baker, Donaldson, Bearman, Caldwell & Berkowitz, New Orleans, Louisiana, for Plaintiff/Appellee.
Joel A. Mendler, Sirote & Permutt, P.C., New Orleans, Louisiana, for Plaintiff/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
MARION F. EDWARDS, Judge.
The State of Louisiana, Department of Health and Hospitals ("DHH") appeals a judgment of the Twenty-Fourth Judicial District Court reversing the DHH's denial of Medicaid benefits on behalf of Mary Dancy Brewton ("Mrs.Brewton"). We affirm.
In January 2003, Mrs. Brewton was admitted to Chateau Living Center for long-term nursing care with Medicaid as her payment source. Her husband, Marvin L. Brewton ("Mr.Brewton"), remained in the family home until April 2003, when he entered Chateau as a private pay patient. The family home was placed on the market in July of 2003. In August 2003, the Brewtons entered into a Personal Care Service Agreement with three relatives, namely their niece, Cynthia Cheatwood; her husband, Roy Cheatwood ("Mr.Cheatwood"); and a nephew, Campbell Morrison. By virtue of that agreement, the Cheatwoods and Morrison were to provide certain personal services to Mr. and Mrs. Brewton over the remainder of their lives. The Brewtons' only child, a son, had died earlier in 2003. The agreement specified what services were to be provided and held that the providers would be compensated with a lump-sum payment of $150,000 after the sale of the home. At that time, Mr. Cheatwood also had general power of attorney to act on behalf of Mrs. Brewton. It is not disputed that the Brewtons did not have $150,000 at the time the agreement was confected.
The residence was sold in November 2003. On March 30, 2004, $109,478.78 was transferred to Mr. Cheatwood from the Brewtons' checking account as partial payment pursuant to the personal care agreement. An additional debit of $8,826.44 was transferred to Mr. Cheatwood in April 2004, also as payment under the agreement. DHH concluded that the total amount paid for services under the agreement was $118,805.22.
DHH became aware of the sale of the Brewton home in May 2004 when Mr. Brewton applied for Medicaid benefits. At that time, DHH also became aware of the Personal Care Service Agreement and of the payments made to the providers. DHH imposed a "transfer of resource for less than fair market value" penalty against the Brewtons. It was determined that the agreement "was not actuarially sound because recipients [were] unable to *17 receive agreed services due to nursing home admission." Mrs. Brewton's penalty, which is the only one at issue, was for one-half of $118.805.02, or $59,402.61. However, DHH later determined that $17,638.84 of that amount was expended, in fact, for non-Medicaid covered expenses, with a total uncompensated transfer of $41,781.87. DHH terminated payments to the nursing home, and Mrs. Brewton was found to have been ineligible for Medicaid benefits for thirteen months, beginning March 2004.
DHH's determination was appealed to an Administrative Law Judge ("ALJ") who upheld the department's decision. Mrs. Brewton then appealed to the district court, which reversed the decision of ALJ. It is from the ruling of the district court that DHH appeals.
In her findings of fact, the ALJ determined that Mrs. Brewton owed Mr. Cheatwood $17,638.84 and that the transfer of the remaining $41,781.87 was for no compensation. In her analysis, the ALJ discussed the chronology of events involving the sale of the Brewton home and disbursal of the funds. In so doing, she held that the sequence of events indicated that Mrs. Brewton was ineligible for Medicaid funds from July 2003 through at least March 2004 and that the transfer of funds was made in order to qualify Mr. Brewton for Medicaid. Then, the ALJ held that the services to be provided in the Personal Service Agreement were already provided to Mrs. Brewton by Medicaid when the agreement was entered into and, thus, could have no value. She held that the fund transfer, which occurred more than seven months after the agreement was signed and four months after the sale of the house, supported her conclusion.
The district court found, in its cogent Reasons for Judgment, that the only issue properly before the ALJ was whether or not the transfer of funds from Mrs. Brewton to the providers was, in fact, uncompensated so as to trigger the penalty. The court found that simply asserting the proposition that any personal care services rendered to a nursing home resident are of no value when the facility is receiving Medicaid benefits is unreasonable and relied on the analysis found in Reed v. Missouri Dep't of Soc. Serv.[1]
DHH alleges the trial court was incorrect in reversing the ALJ's holding that Mrs. Brewton's home became a countable resource when it was placed on the market in July of 2003. DHH further alleges that the court erred when it failed to find the transfer of the funds from the sale of the home was a prohibited transfer of resources.
The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in LSA-R.S. 49:964(G) of the Administrative Procedure Act. Section 964(G) provides that a court can reverse an agency's decision if the appellant's substantial rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the *18 application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
On our review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of a court of appeal.[2]
The applicable law is as follows: An individual who transfers his resources for less than full value may be subject to a period of Medicaid Long Term Care ineligibility. 42 U.S.C. § 1396p(c)(1); Medicaid Eligibility Manual ("MEM") Section I-1674. The months of ineligibility from the date of transfer is computed by taking the total, cumulative uncompensated value of assets transferred and dividing by the state's average private pay facility cost, rounded down. "Uncompensated value" is the difference between the fair market value of the asset on the date of transfer and the amount received for that asset. MEM Sections I-1674, 1675. "Valuable consideration" means that which an individual receives in exchange for his or her right or interest in some act, object, service, or other benefit which has a tangible and/or intrinsic value to the individual that is roughly equivalent to or greater than the value of the transferred asset. Id. Compensation includes items and/or services received by the individual at or after the time of transfer in exchange for the resource, as well as services received prior to the transfer of resources if such services were provided under a binding contract between the parties. Considering such contracts, the value of the compensation is the gross amount paid or agreed to be paid, and is based on the agreement, the expectation of the parties at the time of transfer, and the form of compensation. Id. Relatives and family members can legitimately be paid for care they provide. MEM Section 1674.
We agree with the trial court's finding that, in the record on appeal, there is no indication that the parties disputed the form of the Agreement, insofar as it complied with all of the requirements of a Personal Services Contract under Section 1-1764 of the MEM. As found in the Reasons for Judgment,
[f]urther, there was no claim by the DHH that the services recited therein were not, in fact, provided; nor that the providers expended less time providing such services than was contemplated in the Agreement; nor that the rate of compensation to the providers or the compensation set forth in the agreement were unsound. Further, this Court agrees with plaintiff that although the ALJ found that Mrs. Brewton may have been ineligible for Medicaid from July of 2003 when her home became subject to a sales contract, this issue was not a part of the DHH's original determination and therefore should not have been an issue at the hearing before her.
As we read the Reasons for Judgment, the trial court evidently concluded that the *19 ALJ erroneously considered certain evidence regarding the sale of the Brewton residence in bolstering its conclusion. The record supports this determination. DHH's case log summary, as well as its notification to Mrs. Brewton of its decision, discloses that DHH's determination of ineligibility was based solely on its contention that the transfer of funds was uncompensated, i.e., the transfer of resources was below fair market value and because Mrs. Brewton agreed to services which were already provided as a Medicaid client in a nursing home.
In reaching her determination, the ALJ accepted the affidavits of the Cheatwoods and Morrison as to the services rendered. Although those witnesses were available for questioning, neither the ALJ nor DHH chose to examine them. The affidavits indicate that the Brewtons chose to have the Cheatwoods and Morrison manage their personal and financial affairs for the remainder of their lives. Mr. Cheatwood was given a Health Care Power of Attorney and a General Power of Attorney to carry out some of these arrangements. The affidavits disclose that many hours were spent rendering services to the Brewtons, which included taking care of regular financial arrangements as well as dealing with the sale of the home. For example, much time was spent cleaning, repairing, inspecting, and arranging for professional inspections prior to sale. Although it appears DHH allowed for monies actually expended, there is no indication in the record that it allowed for the actual work done by these relatives. Many other services were performed which are not duplicative of nursing home services: they replaced clothing lost in the home's laundry, provided a phone and phone service for the Brewtons, and obtained several hearing assistance devices for Mr. Brewton, who apparently had a problem keeping track of his hearing aids. They visited regularly to ensure that Mr. Brewton cooperated with the nursing staff, as he had some mental deterioration. On one occasion, Mr. Brewton checked himself out of the hospital where he was being treated and had to be physically returned, by the Cheatwoods, for continuation of necessary hospital care. They attended periodic conferences at the nursing home concerning the Brewtons' ongoing care. They made funeral arrangements for the Brewtons at their request.
In addition, the Cheatwoods and Morrison did other acts such as visiting regularly, and, in attempting to help Mr. Brewton adjust to the loss of his son and his move to the nursing home, Morrison purchased a record player and radio, found CDs and other music that he enjoyed, and ordered cable television. They brought furniture from the Brewton home to the Brewtons' room and replaced various personal items for them. When Mr. Brewton was hospitalized, they visited not only with him but with Mrs. Brewton, to reassure her and to keep her apprised of her husband's condition. They rode in the nursing home van when the Brewtons were taken to their various medical appointments, provided holiday gifts, decorated their room, brought a pet to visit upon the Brewtons' request, and dealt with Medicaid personnel.
As did the trial court, we find the reasoning in the Reed case to be persuasive. There, the plaintiff's daughter performed services similar to the ones enumerated here. In finding these services to be valuable consideration for transfer of funds, the Reed court stated, "We find that these services, among others, support Reed's independence, autonomy, well-being and care in ways that the facility's services do not. They enhance Reed's life in ways that the facility does not, and are above *20 and beyond the care provided by the facility."[3]
For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] 193 S.W.3d 839 (Mo.App.E.D.2006).
[2] Volvo Trucks N.A., Inc. v. State, 04-302 (La. App. 5 Cir. 10/12/04), 886 So.2d 556, writ denied, XXXX-XXXX (La.3/11/05), 896 So.2d 73 and writ denied, XXXX-XXXX (La.3/11/05), 896 So.2d 73.
[3] 193 S.W.3d at 843.